**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE WACHOVIA PREFERRED SECURITIES
AND BOND/NOTES LITIGATION

Master File No. 09-CV-6351 (RJS)

ECF FILED

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF KPMG LLP'S MOTION TO DISMISS
THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

John K. Villa
Steven M. Farina
Emmet T. Flood
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Marshall Beil
McGUIREWOODS LLP
1345 Avenue of the Americas, Seventh Floor
New York, N.Y.  10105
Telephone: (212) 548-7004

July 14, 2010

*Attorneys for KPMG LLP*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 4

     A.     The Parties ................................................................................................... 4

     B.     Plaintiffs' Claim against KPMG ................................................................... 7

ARGUMENT ...................................................................................................................... 10

I.     PLAINTIFFS FAIL TO ALLEGE THAT KPMG MADE A FALSE
     STATEMENT ............................................................................................... 10

     A.     Plaintiffs Fail To Allege that KPMG's Audit Reports Were
           Subjectively False. ............................................................................ 12

     B.     Plaintiffs Fail To Allege that KPMG's Audit Reports Were
           Objectively False. ............................................................................. 15

           1.     Plaintiffs Fail To Allege the Falsity of Wachovia's Statements
                 Related to its Allowance for Loan Losses. ................................ 16

           2.     Plaintiffs Fail To Allege the Falsity of Wachovia's Statements
                 Related to CDO Valuations. ..................................................... 18

           3.     Plaintiffs Fail To Allege the Falsity of Wachovia's Statements
                 Related to Goodwill Accounting. ............................................. 20

II.     PLAINTIFFS FAIL TO ALLEGE THAT KPMG MADE ANY
     STATEMENT RELATED TO TEN OF THE THIRTY OFFERINGS. .......................... 22

III.     PLAINTIFFS FAIL TO ALLEGE THEY HAVE STANDING TO PURSUE
     EIGHTEEN OF THE THIRTY OFFERINGS. ............................................... 23

CONCLUSION .................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................11

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..........................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................10

*Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ 11074, 2003 WL 21058251
    (S.D.N.Y. May 9, 2003)................................................................................................16

*Danis v. USN Commc'ns, Inc.*, 121 F. Supp. 2d 1183 (N.D. Ill. 2000) ...........................12

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168
    (10th Cir. 2006)..............................................................................................7, 13, 14

*Diaz v. Pataki*, 368 F. Supp. 2d 265 (S.D.N.Y. 2005)....................................................10

*Fait v. Regions Financial Corp.*, ___ F. Supp. 2d ___, 2010 WL 1883487 (S.D.N.Y. May
    10, 2010) ....................................................................................................... passim

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349 (S.D.N.Y.
    2007) ..................................................................................................................13, 18

*Freedman v. Value Health, Inc.*, 958 F. Supp. 745 (D. Conn. 1997) .............................15

*Greene v. WCI Holdings Corp.*, 956 F. Supp. 509 (S.D.N.Y. 1997).............................23

*Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ...........................................11

*Hinerfeld v. United Auto Group*, No. 97 Civ. 3533, 1998 WL 397852 (S.D.N.Y. July 15,
    1998) ........................................................................................................................17

*In re 2007 Novastar Fin., Inc. Sec. Litig.*, No. 07-0139-CV-W-ODS, 2008 WL 2354367
    (W.D. Mo. June 4, 2008) ..........................................................................................16

*In re CIT Group, Inc.*, 349 F. Supp. 2d 685 (S.D.N.Y. 2004) ...........................12, 17, 21

*In re Corning Inc. Sec. Litig.*
    No. 04-2845-CV, 2005 WL 714352 (2d Cir. Mar. 30, 2005)............................20, 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005)................16

*In re Global Crossing*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003) ...............................14, 15

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004)............11

*In re Harmonic, Inc. Sec. Litig.*, No. C 00-2287 PJH, 2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ........................................................................................................15

*In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189 (S.D.N.Y. 2004) ..............................16

*In re Marsh & McLennan Co. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) .......................11

*In re Merrill Lynch & Co. Sec., Deriv & ERISA Litig.*, No. 07 Civ. 9633, 2009 U.S. Dist. LEXIS 61129 (S.D.N.Y. Mar. 3, 2009) ................................................................10

*In re Morgan Stanley Tech. Fund Secs. Litig.*, 643 F. Supp. 2d 366 (S.D.N.Y. 2009) ................10

*In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248 (S.D.N.Y. 2005)................................18

*In re Scottish Re Group, Inc.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007) ...........................................15

*In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472 (S.D.N.Y. 2005) .....................................11

*Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49 (D. Mass. 1995) .......................17

*Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007)...................................................17

*Rubin v. MF Global, Ltd.*, 634 F. Supp. 2d 459 (S.D.N.Y. 2009) .................................................19

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992) ..............................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................................4

*Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991)..............................................................14

## STATUTES & RULES

15 U.S.C. § 77k.......................................................................................................................1, 11, 22

Fed. R. Civ. P. 8 ............................................................................................................................10

Fed. R. Civ. P. 9(b) .......................................................................................................................10

Fed. R. Civ. P. 12(b)(1)...................................................................................................................4

Fed. R. Civ. P. 12(b)(6)...............................................................................................................4, 10

## OTHER AUTHORITIES

Accounting for Derivative Instruments and Hedging Activities, Statement of Fin. Accounting Standards No. 133, ¶ 217(b) (Fin. Accounting Standards Bd. 1998)...................18

AU § 110.03...................................................................................................................................8

AU § 230.13.................................................................................................................9

AU § 508.08.................................................................................................................8

Ben Logan, *The ABX Index: A Pricing Conundrum*, CREDIT, May 1, 2008 ................................19

Fair Value Measurements, Statement of Fin. Accounting Standards No. 157 (Fin. Accounting Standards Bd. 2006) .............................................................................19

Defendant KPMG LLP ("KPMG") respectfully submits this memorandum of law in support of its motion to dismiss Count III of the Amended Consolidated Class Action Complaint (the "Amended Complaint" or "Am. Compl."), the only count asserted against KPMG.

## PRELIMINARY STATEMENT

The claim against KPMG is predicated upon a fundamental misconception of the role of the financial statement auditor. An auditor is neither the issuer of the financial statements nor their guarantor; Plaintiffs cannot state a claim against an auditor simply by alleging criticisms of the company's financial statements and then conclusorily asserting that the auditor is liable "for the same reasons." Nor is an auditor a prognosticator; Plaintiffs' hindsight pleading is not sufficient to sustain a claim against KPMG.

It is a fundamental tenet of the securities laws that a party may be held liable only for its own statements and then only if it fails in its duties in rendering those statements. KPMG's only statements are the audit reports it issued in relation to Wachovia's year-end 2006 and 2007 financial statements. To state a claim against KPMG under Section 11 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k, Plaintiffs must allege plausible facts which, if proven at trial, demonstrate that KPMG's opinions were false and misleading at the time they were prepared—that is, that KPMG could not have believed or did not in fact believe the audit opinions attached to Wachovia's financial statements. Plaintiffs do not even attempt this showing. Instead, the Amended Complaint lists a series of accounting estimates—judgment calls by Wachovia's management in 2006 and 2007—and argues that because the home mortgage market sector collapsed, the original management judgments are actionable. That is not sufficient to show that either Wachovia or KPMG has liability.

Plaintiffs assert a single count against KPMG under Section 11 (Count III), claiming that it is liable for putative misstatements and omissions contained in (i) Wachovia's 2006 and 2007 financial statements and (ii) KPMG's audit reports relating to those financial statements. In filing their Amended Complaint, Plaintiffs made no substantive changes to their original allegations against KPMG: although the Amended Complaint spans 329 paragraphs and 150

pages, it still fails to identify any specific mistakes in KPMG's audits of Wachovia's 2006 and 2007 financial statements. It devotes a mere twelve paragraphs to KPMG; only three of those reference "statements" by KPMG. In those brief passages, Plaintiffs do not describe any erroneous audit procedure or judgment made by KPMG, or specify what aspects of KPMG's audits of Wachovia's 2006 and 2007 financial statements were mistaken.

The allegations regarding KPMG essentially assert uncontroversial facts that do not provide a basis for liability: that KPMG audited Wachovia's year-end 2006 and 2007 financial statements, rendered "unqualified" opinions on those statements, and consented to Wachovia's incorporation of its 2006 and 2007 audit reports in certain SEC registration statements and related offering materials. Having then set forth a number of alleged errors in Wachovia's offering materials for which it attempts to hold the company liable—allegations that do not even state a claim against Wachovia itself—Plaintiffs engage in a classic *non sequitur* and assert that because KPMG performed financial statement audits and issued audit reports relating to the financial statements, it is liable "for the same reasons" that Wachovia's own statements are allegedly in error. (Am. Compl. ¶¶ 235, 252.) Plaintiffs' Amended Complaint must rely on this logical leap because it has not made any allegations concerning—let alone impugning—KPMG's audit procedures or either of its audit reports. Plaintiffs simply have not alleged facts stating an adequate basis for KPMG's liability under Section 11.

The thrust of Plaintiffs' Amended Complaint appears to be that the Court should infer, from the steep decline in Wachovia's fortunes, that the auditor is liable to investors. That has never been the standard for liability of an auditor under the securities laws and, given the current global financial crisis, the instant case would be a particularly inappropriate application of such a presumption. The unprecedented collapse in residential property values and resulting rapid deterioration in mortgages collateralized by those properties caused industry-wide declines in the value of companies holding mortgage-related assets. As the value of those assets fell, the industry tied to them fell even more precipitously, because of the leverage inherent in financial institutions. This has been universally recognized throughout world financial markets; far from

being attributable to the auditors of these financial institutions, it is a risk inherent in such institutions.  Wachovia's highly visible purchase of Golden West—a large mortgage lender—for a premium over book value, with the attendant increase in goodwill, tied Wachovia more closely to the residential mortgage markets than it had been historically.  Movements in the mortgage markets would clearly impact Wachovia's fortunes; no investor could have missed this connection.

Where the Amended Complaint does discuss Wachovia's financial statements, Plaintiffs appear to assume (rather than allege the facts required to show) that the mere fact of a steep decline in the value of assets accompanied by a share-price decline over time means that, given substantially lower later asset values, earlier-reported higher asset values must have been incorrect and misleading—and that an alleged failure to detect the supposed earlier error necessitates an inference of liability on the part of the independent auditor.  The inference is unsupportable.  Plaintiffs' conclusory allegations are insufficient (where not altogether inapt) as to KPMG and subject to dismissal as a matter of law.

As we demonstrate below, the legal flaws in Plaintiffs' claim against KPMG warrant dismissal because:

*First*, Plaintiffs have failed to allege that the opinions expressed by KPMG in its audit reports were not "truly held" as those opinions relate to the allowance for loan losses, the valuation of collateralized debt obligations ("CDOs"), and goodwill accounting, such that KPMG's expression of those opinions were themselves false statements.  *See* Part I-A, *infra*.

*Second*, Plaintiffs have failed to sufficiently allege plausible facts which, if proven, would show that KPMG has made any actionable false or misleading statements or that it could not have reached the opinions that it rendered.  *See* Part I-B, *infra*.

*Third*, Plaintiffs purchasing securities in, or otherwise acquiring securities traceable to, ten of the thirty offerings purportedly at issue cannot state a Section 11 claim against KPMG because, as Plaintiffs also allege, KPMG issued its 2006 and 2007 audit reports *after* the

effective date of ten of those offerings.  KPMG's work post-dating those ten offerings cannot provide a basis for any Section 11 liability against it.  *See* Part II, *infra*.

*Fourth,* Plaintiffs lack standing to assert any claims relating to eighteen of the thirty offerings allegedly comprising part of the putative class because the Amended Complaint fails to assert that any named plaintiff purchased or otherwise acquired securities in, or traceable to, those offerings, or that they have suffered any damages.  Absent such allegations, Plaintiffs cannot maintain suit against KPMG or any other defendant on those eighteen offerings.  *See* Part III, *infra*.

For these reasons—each developed at greater length below—Plaintiffs' claims against KPMG should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## FACTUAL BACKGROUND

### A.     The Parties

KPMG is a limited liability partnership that provides audit, tax, and advisory services throughout the United States.  (*See* Am. Compl. ¶ 75.)  Wachovia hired KPMG to perform audits of Wachovia's financial statements for fiscal years 2006 and 2007.  (Am. Compl. ¶ 75.)  KPMG issued its audit reports on those financial statements on February 23, 2007 and February 25, 2008, respectively.  Declaration of Emmet T. Flood in Support of KPMG's Motion to Dismiss Amended Complaint ("Flood Decl."), Ex. A, Ex. 13 at 64; Ex. B, Ex. 13 at 70;[1] (*see also* Am. Compl. ¶ 233.)  Shortly after each audit report was issued, KPMG gave Wachovia its consent to incorporate the audit reports into certain registration statements Wachovia filed with the U.S.

---

[1]  In addition to the allegations in the Amended Complaint, the Court "must consider . . . sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *see also ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (court may consider "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").  The excerpts of certain of Wachovia's filings with the U.S. Securities & Exchange Commission attached hereto are thus appropriate for consideration by this Court.

Securities & Exchange Commission ("SEC").  (Am. Compl. ¶¶ 75, 234, 291.)  According to Plaintiffs, KPMG's consent extended to those offerings made by Wachovia after February 23, 2007.  (Am. Compl. ¶ 234.)  As the Amended Complaint does not allege that KPMG's consent was given before, at the earliest, February 23, 2007 (Am. Compl. ¶ 233), Plaintiffs cannot claim that KPMG is liable for any misstatements or omissions associated with offerings occurring prior to February 23, 2007.[2]

The named plaintiffs purport to represent a class of persons and entities who purchased or otherwise acquired Wachovia bonds or preferred securities as part of thirty registered offerings between July 31, 2006 and May 29, 2008.  (Am. Compl. ¶ 1; *see also* Am. Compl. App.)  As scrutiny of the Amended Complaint makes clear, however, none of the named plaintiffs purchased or acquired securities issued in sixteen of the thirty offerings at issue.[3]  As for an

---

[2]  KPMG therefore cannot be liable for any misstatements or omissions purportedly contained in offering materials associated with the following ten offerings:  (1) February 15, 2007, Wachovia Capital Trust IV / 6.375% Trust Preferred Securities (92978U207) (Am. Compl. App. at A-1–A-2); (2) July 31, 2006, Three-Month LIBOR Floating Rate Notes Due August 1, 2013 (92976WBB1) (Am. Compl. App. at A-6); (3) July 31, 2006, 5.70% Notes Due August 1, 2013 (92976WBA3) (Am. Compl. App. at A-6–A-7); (4) October 23, 2006, Three-Month LIBOR Floating Rate Notes Due October 15, 2011 (929903CG5) (Am. Compl. App. at A-7); (5) October 23, 2006, 5.30% Notes Due October 15, 2011 (929903CF7) (Am. Compl. App. at A-8); (6) October 23, 2006, 5.625% Subordinated Notes Due October 15, 2016 (929903CH3) (Am. Compl. App. at A-8–A-9); (7) October 23, 2006, Three-Month LIBOR Floating Rate subordinated Notes Due December 15, 2016 (929903CJ9) (Am. Compl. App. at A-9); (8) December 13, 2006, Three-Month LIBOR Floating Rate Senior Notes Due December 1, 2009 (92976WBC9) (Am. Compl. App. at A-9–A-10); (9) February 12, 2007, The 10/23/06 Three-Month LIBOR Floating Rate Notes Due October 15, 2011 Offering (Supplemental) (929903CG5) (Am. Compl. App. at A-10); and (10) February 12, 2007, The 10/23/06 5.3% Notes Due October 15, 2011 Offering (Supplemental) (929903CF7) (Am. Compl. App. at A-10–A-11).

[3]  The Amended Complaint does not identify a named plaintiff for any of the following sixteen offerings:  (1) July 31, 2006, Three-Month LIBOR Floating Rate Notes Due August 1, 2013 (92976WBB1) (Am. Compl. App. at A-6); (2) July 31, 2006 5.70% Notes Due August 1, 2012 (92976WBA3) (Am. Compl. App. at A-6–A-7); (3) October 23, 2006, Three-Month LIBOR Floating Rate Notes Due October 15, 2011 (929903CG5) (Am. Compl. App. at A-7); (4) October 23, 2006, 5.30% Notes Due October 15, 2011 (929903CF7) (Am. Compl. App. at A-8); (5) October 23, 2006, Three-Month LIBOR Floating Rate Subordinated Notes Due October 15, 2016 (929903CJ9) (Am. Compl. App. at A-9); (6) February 12, 2007, The 10/23/06 Three-

---

additional two offerings, Plaintiffs cannot establish standing because their only purchase of securities occurred in the secondary market, following supplemental offerings.[4]

In addition to KPMG, Plaintiffs name as defendants Wachovia and twenty-nine individuals and entities affiliated with it, including certain of Wachovia's current and former directors and officers, and Wells Fargo, the successor-in-interest to Wachovia (collectively, "Wachovia Defendants").  (Am. Compl. ¶¶ 22–26, 27–53.)  Against the Wachovia Defendants, Plaintiffs assert various claims under Sections 11, 12(a)(2), and 15 of the Securities Act.  (Am. Compl. ¶¶ 265–74, 297–306, 317–22.)  Plaintiffs also assert claims against twenty underwriters (collectively, "Underwriter Defendants") in relation to their participation in the offerings at issue.  (Am. Compl. ¶¶ 54–74.)  Plaintiffs allege that the Underwriter Defendants violated Sections 11 and 12(a)(2) of the Securities Act.  (Am. Compl. ¶¶ 286–96, 307–16.)

---

Month LIBOR Floating Rate Notes Due October 15, 2011 Offering (Supplemental) (929903CG5) (Am. Compl. App. at A-10); (7) February 12, 2007, The 10/23/06 5.30% Notes Due October 15, 2011 Offering (Supplemental) (929903CF7) (Am. Compl. App. at A-10–A-11); (8) June 8, 2007, Three-Month LIBOR Floating Rate Notes Due June 15, 2017 (929903DU3) (Am. Compl. App. at A-11–A-12); (9) June 8, 2007 5.75 Notes Due June 15, 2017 (929903DT6) (Am. Compl. App. at A-12); (10) July 26, 2007, Three-Month Rate Notes Due July 26, 2010 (92976WBD7) (Am. Compl. App. at A-13–A-14); (11) August 20, 2007, Three-Month LIBOR Floating Rate Notes Due August 20, 2009 (929903EC2) (Am. Compl. App. at A-14); (12) September 17, 2007, the 6/8/07 5.75% Notes Due June 15, 2017 Offering (Supplemental) (929903DT6) (Am. Compl. App. at A-14–A-15); (13) November 14, 2007, The 7/31/06 5.70% Notes Due August 1, 2013 Offering (Supplemental) (92976WBA3) (Am. Compl. App. at A-15–A-16); (14) November 27, 2007, Three-Month LIBOR Floating Rate Notes Due November 24, 2009 (92976WBG0) (Am. Compl. App. at A-16); (15) November 27, 2007, Three-Month LIBOR Floating Rate Notes Due November 24, 2009 (92976WBG0) (Am. Compl. App. at A-17); and (16) December 18, 2007, The 6/8/07 5.75% Notes Due June 15, 2017 Offering (Supplemental) (929903DT6) (Am. Compl. App. at A-17–A-18).

[4]  These offerings include:  (1) June 19, 2007, The 4/23/07 Three-Month LIBOR Floating Rate Notes Due April 23, 2012 (Supplemental) (929903DFG) (Am. Compl. App. at A-13); and (2) May 29, 2008, The 5.50% Fixed Rate Notes Due May 1, 2013 (Supplemental) (92976WBJU) (Am. Compl. App. at A-20–A-21).

### B.       Plaintiffs' Claim against KPMG

Plaintiffs seek to hold KPMG liable for two sets of "misstatements":  (i) Wachovia's 2006 and 2007 year-end financial statements, and (ii) KPMG's audit reports related to Wachovia's 2006 and 2007 financial statements.  (Am. Compl. ¶ 291 ("KPMG is liable for the material misstatements or omissions in [Wachovia's 2006 and 2007] financial statements and in its 2006 and 2007 Audit Opinions.").)  Plaintiffs (correctly) make no attempt to assert that KPMG is liable for any other statements contained in Wachovia's Form 10-Ks, in the offering materials at issue, or any other statements incorporated by reference into those materials.  KPMG therefore cannot be liable for such statements made outside the financial statements themselves, including those made in any of Wachovia's Form 8-Ks or Form 10-Qs filed with the SEC.

As to Wachovia's 2006 and 2007 financial statements, Plaintiffs allege that KPMG is liable under Section 11 "for the same reasons" as Wachovia.  (Am. Compl. ¶¶ 235, 252.)  But KPMG did not prepare either Wachovia's 2006 or 2007 financial statements.  KPMG did not make or adopt any of the assertions contained therein, or otherwise "certify," "guarantee," or "insure" the absolute accuracy of those financial statements.  *See Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006) (discussing the role of an independent auditor).  Indeed, as the Amended Complaint admits, KPMG specifically disclaimed responsibility for Wachovia's financial statements in each of its audit reports, stating, "*[t]hese consolidated financial statements are the responsibility of the Company's management*.  Our responsibility is to express *an opinion* on these consolidated financial statements based on our audits."[5]  (Am. Compl. ¶ 233); Flood Decl., Ex. A, Ex. 13 at 64; Ex. B, Ex. 13 at 70

---

[5]  The Public Company Accounting Oversight Board's interim auditing standards make clear that an entity's financial statements are the responsibility of the entity's management:

> *The financial statements are management's responsibility*.  The auditor's responsibility is to express an opinion on the financial statements. . . .  The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management.  The auditor's knowledge of these matters and internal control is limited to that acquired through the audit.  Thus, the fair presentation of financial statements in conformity with generally accepted

(emphases added).  What KPMG did each year was to provide an *opinion* on the financial statements, which financial statements included Wachovia management's judgments and estimates related to the allowance for loan losses, certain securities (including CDOs), and goodwill.  As Judge Kaplan recently recognized, opinions of this sort are "actionable under Section 11 or 12 only if the complaint alleges that the speaker did not truly hold the opinion at the time it was issued."  *Fait v. Regions Financial Corp.*, ___ F. Supp. 2d ___, 2010 WL 1883487, at *3 (S.D.N.Y. May 10, 2010) (dismissing Section 11 claim against auditor).

   KPMG's conduct in this matter occurred in its capacity as an independent financial statement auditor, a role that is well understood.  An auditor expresses an opinion on a set of financial statements based on its audit procedures.  An audit report typically contains two principal assertions:  (i) a statement regarding the standards the auditor followed in conducting its audit procedures, and (ii) an opinion, based on those procedures, as to whether the financial statements, as of a particular date in time, fairly present the financial position and results of the audited entity in accordance with generally accepted accounting principles ("GAAP").  *See* AU § 508.08 ("The basic elements of [an audit] report are the following: . . . [a] statement that the audit was conducted in accordance with generally accepted auditing standards . . . [and] [a]n opinion as to whether the financial statements present fairly, in all material respects, the financial position of the Company as of the balance sheet date and the results of its operations and its cash flows for the period then ended in conformity with generally accepted accounting principles.").  KPMG's audit reports on Wachovia's 2006 and 2007 financial statements were no exception to this general rule.  Each of those reports stated:

   We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States).  Those standards require

---

accounting principles is an implicit and integral part of management's responsibility. . . .  *[T]he auditor's responsibility for the financial statements he or she has audited is confined to the expression of his or her opinion on them.*

AU § 110.03 (emphases added).

that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements.  An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation.  We believe that our audits provide a reasonable basis for our opinion.

*In our opinion*, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Wachovia Corporation and subsidiaries as of December 31, 200[X] and 200[X], and the results of their operations and their cash flows for each of the years in the three-year period ended December 31, 200[X], in conformity with U.S. generally accepted accounting principles.

Flood Decl., Ex. A, Ex. 13 at 64; Ex. B, Ex. 13 at 70 (emphasis added); (Am. Compl. ¶ 233.)

With regard to the truth or falsity of KPMG's audit reports, Plaintiffs level the conclusory allegation that KPMG's reports were "materially untrue and misleading for the same reasons" as Wachovia's 2006 and 2007 financial statements.  (Am. Compl. ¶¶ 235, 252.)  Plaintiffs make no attempt to specify why KPMG's opinion statements were false or misleading when made or to assert *any facts* which, if proven, could demonstrate that KPMG lacked belief in its own opinions.  Nor do Plaintiffs sufficiently allege that Wachovia's financial statements were not prepared in accordance with GAAP. [6]

---

[6]  An auditor's opinion on an entity's financial statements is exactly that—an opinion.  Such statements are not designed to guarantee the accuracy of the entity's financial statements.  Rather, they provide only "reasonable assurance" as to whether the entity's financial statements are free of material misstatement.  *See* AU § 230.13 ("Since the auditor's opinion on the financial statements . . . is based on the concept of obtaining reasonable assurance, the auditor is not an insurer and his or her report does not constitute a guarantee.  Therefore, the subsequent discovery that either a material misstatement, whether from error or fraud, exists in the financial statements . . . does not, in and of itself, evidence (a) failure to obtain reasonable assurance, (b) inadequate planning, performance, or judgment, (c) the absence of due professional care, or (d) a failure to comply with the standards of the Public Company Accounting Oversight Board (United States).").  Put another way, allegations that financial statements do not comply with GAAP are not sufficient, without more, to allege that the audit did not comply with PCAOB standards (GAAS).

For these fundamental reasons, the Amended Complaint fails to state a claim against KPMG and should be dismissed.

## ARGUMENT[7]

### I.   PLAINTIFFS FAIL TO ALLEGE THAT KPMG MADE A FALSE STATEMENT.[8]

A complaint that fails to state a viable claim for relief must be dismissed.  *See* Fed. R. Civ. Pro. 12(b)(6); *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 382 (S.D.N.Y. 2009) (dismissing Section 11 claim under Rule 12(b)(6)).  In deciding this motion, the Court should accept well-pleaded and plausible factual allegations, but must disregard blanket allegations of wrongdoing because "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness."  *Diaz v. Pataki*, 368 F. Supp. 2d 265, 269 (S.D.N.Y. 2005) (quoting *Mason v. Amer. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003)).

To survive a motion to dismiss, Plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is *plausible on its face*."  *Bell*

---

[7]  KPMG incorporates by reference its Motion to Dismiss the Consolidated Class Action Complaint, filed November 3, 2009, and the memorandum of law in support of that motion.  It also incorporates by reference and joins in the arguments made in Sections II and IV of the Consolidated Memorandum of Law in Support of the Wachovia Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaints, and Sections I and III of the Memorandum of Law in Support of the Underwriter Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint.

[8]  KPMG advances these arguments under Federal Rule of Civil Procedure 8.  As noted *supra* n. 7, KPMG joins in the arguments made by the Wachovia Defendants and Underwriter Defendants that the Complaint sounds in fraud and is therefore subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  (*See* Am. Compl. ¶¶ 235, 252, 289.)  To the extent that the Court agrees and applies Rule 9(b) to Plaintiffs' claims, the allegations in the Complaint do not come close to satisfying the heightened pleading requirements as to alleged misstatements by KPMG, *see In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.*, No. 07 Civ. 9633, 2009 U.S. Dist. LEXIS 61129, at *11 (S.D.N.Y. Mar. 3, 2009) (applying Rule 9(b) where "much of the 'wording and imputations of the complaint are classically associated with fraud'"), and should be dismissed for that reason.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (emphasis added).  A claim is only facially plausible where "the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009) (emphasis added).

Count III of the Amended Complaint purports to state a cause of action against KPMG for violation of Section 11 of the Securities Act.  Part (a) of Section 11 provides that:

> In case any part of a registration statement, when such part becomes effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statement not misleading, any person acquiring such security . . . may . . . sue:

in addition to the issuer and other related persons (listed in parts (a)(1)–(3)),

> (4) every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him.

15 U.S.C. §77k(a)(1) & (4).

Under the plain text of the statute, accountants can be liable under Section 11 "only for those matters which purport to have been certified or prepared by them."[9]  *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 n.11 (1983); *see also In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 348 n.22 (S.D.N.Y. 2004) (noting that this "statement of the law is indisputably correct").  They are not responsible for other public statements that are contained in registration materials.  *In re Marsh & McLennan Co. Sec. Litig.*, 501 F. Supp. 2d 452, 478 (S.D.N.Y. 2006).  In this respect, auditors are "[u]nlike other Section 11 defendants."  *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 491 (S.D.N.Y. 2005).

Plaintiffs premise their entire claim against KPMG on the allegation that KPMG's 2006

---

[9]  Although a financial statement auditor is necessarily an "accountant," accountants can play many more roles than simply that of an independent auditor, including, for example, preparing financial statements or performing attestation or valuation services.  Here, KPMG acted solely as a financial statement auditor.  (Am. Compl. ¶ 75.)

and 2007 audit reports were "materially untrue and misleading for the same reasons" that Plaintiffs allege Wachovia's financial statements were false:  specifically, that Wachovia's financial statements did not fairly present that company's financial position and results of operations and were not prepared in accordance with GAAP.  This type of broad-brush pleading fails to allege facts supporting liability for the independent audit performed, and the opinion statements made, by KPMG here in connection with the 2006 and 2007 audit reports.

Part A demonstrates that where an alleged misstatement is a statement of opinion, a plaintiff must allege that the defendant "did not actually believe" the judgment expressed.  *Fait*, 2010 WL 1883487, at *4-5; *see also In re CIT Group, Inc.*, 349 F. Supp. 2d 685, 690 (S.D.N.Y. 2004).[10]  Part B shows that Plaintiffs have not sufficiently alleged that Wachovia's financial statements were not prepared in compliance with GAAP.

### A.    Plaintiffs Fail To Allege that KPMG's Audit Reports Were Subjectively False.

The alleged GAAP violations by Wachovia involve accounting estimates in the areas of loan loss reserves, valuation of securities, and goodwill impairment, which estimates require that management make highly subjective judgments regarding future events and that management estimate the values of assets where no market-based valuation can be obtained.  KPMG's 2006 and 2007 audit reports provided a professional opinion as to Wachovia's accounting judgments, and did so in terms of a stated basis.  Plaintiffs have failed to allege any deficiencies in KPMG's opinions or any facts suggesting that KPMG did not believe in those opinions.

A recent decision from Judge Kaplan confirms the long-standing rule that "[a]n opinion is actionable under Section 11 or 12 only if the complaint alleges that the speaker did not truly

---

[10]  Plaintiffs have not, for example, alleged that KPMG's audits were not conducted in accordance with PCAOB Standards (GAAS).  Even had they made such an allegation, given that Plaintiffs have not sufficiently pleaded the falsity of Wachovia's financial statements, as discussed in this section, it would not be enough under Section 11 for liability to attach.  *See, e.g.*, *Danis v. USN Commc'ns, Inc.*, 121 F. Supp. 2d 1183, 1192 (N.D. Ill. 2000) (under Section 11, if "the financial statements were not materially misstated as a result of alleged GAAP violations, [the auditor's] assurance of compliance with GAAP was not materially misleading").

hold the opinion at the time it was issued." *Fait*, 2010 WL 1883487, at \*3. In *Fait*, a putative class asserted claims arising under Sections 11, 12, and 15 of the Securities Act against a bank, several of its directors, and the bank's auditor. As Plaintiffs do here, the plaintiffs in *Fait* alleged that the defendant bank's registration statement and related offering materials were materially false and misleading because they incorporated financial statements that overstated goodwill and underestimated loan loss reserves. *Id.* at \*1. Judge Kaplan dismissed the claims against all defendants, reasoning that their statements regarding the recorded goodwill and loan loss reserves represented estimates or opinions and that plaintiffs had failed to adequately allege the subjective falsity of those opinions. *Id.* at \*4-5. Where a Section 11 action is based on opinion statements, Judge Kaplan held that the test of material falsity "is whether the representation was false—not because the value [was] wrong in some empirical sense, but because the financial statement in the 10-K did not reflect [the maker's] honest opinion." *Id.* at \*4 (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 361–63 (S.D.N.Y. 2007)).

Similarly, in *Deephaven Private Placement Trading, Ltd v. Grant Thornton & Co.*, investors sued an independent auditor, alleging, as Plaintiffs do here, that supposed errors in a company's financial statements were, without more, the basis for liability against the company's independent auditor. 454 F.3d 1168 (addressing claim of auditor liability under Section 18 of Securities Exchange Act of 1934). Plaintiffs alleged that because the company's financial statements did not conform to GAAP, the auditor was liable for its opinion that the financial statements conformed to GAAP. *Id.* at 1171. The Tenth Circuit rejected investors' "for the same reasons" theory and dismissed the action with prejudice. First, the court noted that auditors do not "certify" financial statements in the sense that they "guarantee" or "insure" them. *Id.* at 1174. The court then pointed out that, in order to state a claim against an independent auditor, plaintiffs must allege facts showing that statements in the audit opinion, and not merely the financial statements, were untrue or misleading when made. *Id.* To do so, the court noted that plaintiffs must allege that the opinion was subjectively false: that is, that the opinion either was not based on the audit itself or that the auditor could not have believed that the opinion had a

reasonable basis because, in view of the enormity of alleged GAAP violations, the opinion could not have been rendered without disregarding the audit's results. *Id.* n.9. The court reemphasized that the audit opinion was *an opinion* and that plaintiffs had failed in their obligation to allege false or misleading statements in the context of the opinion's stated basis. *Id.* at 1176.

In this matter, Plaintiffs have not even attempted to allege that KPMG did not believe its own opinions as to the allowance for loan losses, valuation of CDOs, and goodwill accounting. As Judge Kaplan recognized, to sustain a Section 11 claim premised on a statement of opinion in these highly subjective areas, plaintiffs must allege not only that there were errors in the underlying financial statements, but also facts plausibly supporting the inference that, at the time the auditor issued its audit reports, it did not believe its opinion on these management estimates to be true. *Fait*, 2010 WL 1883487, at *5; s*ee also In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 210 (S.D.N.Y. 2003) ("Materially misleading statements of opinion and belief can be actionable under the securities laws, where the party offering the opinion misrepresents its true belief, that is, where the opinion or belief is not truly held.").[11]

The *Fait* decision is but the most recent example in a long line of cases rejecting Section 11 claims against a variety of defendants in similar contexts. In *In re Global Crossing*, for example, the court rejected plaintiffs' attempt to extend Section 11 liability to an underwriter defendant that had issued a fairness opinion, where there were no allegations that the defendant was "aware that its purported opinion was wrong, or that it was based on faulty information, or that [defendant] was privy to information known to [company] executives that would have undermined the financial information on which [defendant] purported to rely." 313 F. Supp. 2d at 210; *see also In re Scottish Re Group, Inc.*, 524 F. Supp. 2d 370, 398 (S.D.N.Y. 2007) (citing

---

[11]  *Global Crossing* traces its roots back to *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), in which the Supreme Court addressed the question of whether "statements of reasons, opinions, or beliefs are statements 'with respect to . . . material facts,'" such that securities liability could attach. *Id.* at 1091. The Court held that such statements were facts, but that where an opinion is at issue, a consideration of both its objective and subjective components is required. *Id.* at 1092–94.

*Virginia Bankshares*, 501 U.S. at 1092) (dismissing claims against auditor); *In re Harmonic, Inc.*

*Sec. Litig.*, No. C 00-2287 PJH, 2006 WL 3591148, at *16 (N.D. Cal. Dec. 11, 2006) (holding

that plaintiffs had failed to allege that defendants did not sincerely believe their "best interest"

opinion, and noting that although "an 'opinion' can be considered a 'fact' for purposes of §11(a),

a plaintiff must show that the defendant did not believe in the statement made"); *Freedman v.*

*Value Health, Inc.*, 958 F. Supp. 745, 752 (D. Conn. 1997) (rejecting plaintiffs' contention that

an opinion "may give rise to liability based solely on a showing that the objective prong was

false or misleading").  Where, as here, a plaintiff's claims against a third party are premised

solely on "the many allegations of the complaint claiming that [the corporation's] financial

information was false," consent to incorporation of the opinion is simply not a sufficient

foundation for liability.  *In re Global Crossing*, 313 F. Supp. 2d at 210.

### B.       Plaintiffs Fail To Allege that KPMG's Audit Reports Were Objectively False.

Even assuming the Amended Complaint could clear the subjective falsity hurdle, which it

plainly cannot, Plaintiffs fail to allege that KPMG did not have a reasonable basis for its audit

reports.  That is, the Amended Complaint does not plead sufficient facts to create an inference

that Wachovia's 2006 and 2007 year-end financial statements were materially misstated.  In both

its 2006 and 2007 Form 10-Ks, Wachovia clearly identified "five policies as being particularly

*sensitive to judgments*" and involving "*significant estimates . . . :  allowance for loan losses* and

reserve for unfunded lending commitments (which is recorded in other liabilities); *fair value of*

*certain financial instruments*; consolidation; *goodwill impairment*; and contingent liabilities."

Flood Decl., Ex. A, Ex. 13 at 17; Ex. B, Ex. 13 at 18 (emphases added).  All three deficiencies

alleged by Plaintiffs—the allowance for loan losses, the valuation of CDOs, and goodwill

impairment—fall within the very policies *Wachovia itself repeatedly highlighted* for investors as

involving the exercise of judgment and use of estimates.  Plaintiffs cannot now claim to have

been unaware that the financial statements embodied precisely these judgments and estimates.

In each of these areas, Plaintiffs point to Wachovia's performance or events that occurred

*after* the time of KPMG's audit opinions to support an inference that the original accounting

decisions, which incorporated judgments about future events, were incorrect.  In the midst of an unprecedented global crisis affecting nearly every corner of the financial sector, Plaintiffs' allegations that Wachovia (and its auditor) should have been able to predict the future ring especially hollow.  Numerous courts have rejected this type of fraud or falsity "by hindsight." *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 447 (S.D.N.Y. 2005) ("truth of a statement made in the prospectus is adjudged by the facts as they existed when the registration statement became effective"); *In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 205 (S.D.N.Y. 2004) (same); *see also Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ 11074, 2003 WL 21058251, at *10 (S.D.N.Y. May 9, 2003) ("Allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.") (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)) (internal quotations omitted).  Wachovia was far from the only entity that failed to fully anticipate the depth and severity of the unprecedented global crisis; indeed, the entire financial services industry was similarly positioned.

Plaintiffs must do more than point to a series of judgment calls and estimates by Wachovia to support its allegations that Wachovia's financial statements were misstated.  *See In re 2007 Novastar Fin., Inc. Sec. Litig.*, No. 07-0139-CV-W-ODS, 2008 WL 2354367, at *3 (W.D. Mo. June 4, 2008) (rejecting claim that defendants violated GAAP where "nobody . . . has suggested Novastar should or must restate its financial reports").  They have not done so. Plaintiffs' claims against KPMG stemming from putative violations of GAAP inherent in Wachovia's business judgments and estimates regarding allowance for loan losses, valuation of CDOs, and goodwill impairment therefore fail as a matter of law.  This conclusion is reinforced by an analysis of the supposedly supporting allegations made relating to each of these issues.

### 1.    Plaintiffs Fail To Allege the Falsity of Wachovia's Statements Related to its Allowance for Loan Losses.

Plaintiffs fail to plausibly allege that Wachovia's year-end 2006 and 2007 allowances for loan losses were materially understated.  The Amended Complaint attempts to demonstrate the

inadequacy of Wachovia's allowance for loan losses by pointing to later changes in the level of the allowance and its associated methodology.  (*See* Am. Compl. ¶¶ 153, 156.)  Plaintiffs' allegations identify no facts, however, to suggest either that Wachovia did not believe that the allowance recorded as of December 31, 2006 and December 31, 2007 was adequate, or that Wachovia had no reasonable basis for such a business judgment.  *A fortiori*, its auditor cannot be faulted.

Allegations of this nature are not actionable "under the securities laws if they simply represented a failure on the part of defendants to correctly gauge the adequacy of the loan loss reserves."  *In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d at 689 (granting motion to dismiss). A *later* revision of the amount of reserves is not proof that the *earlier* level of reserves was inaccurate.  *Id.*; *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir. 1992) (noting that there "appears to be no single method of evaluating and setting loan loss reserves, perhaps because no method has proven foolproof"); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 Fed. App'x 400 (2d Cir. Feb. 26, 2009)  (the "process of estimating loss reserves is a difficult one, and even following [proper] accounting policies might not result in adequate loss reserves"); *Hinerfeld v. United Auto Group*, No. 97 Civ. 3533, 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998) (failure to anticipate the extent of necessary reserves, even if it amounts to mismanagement, is not actionable under federal securities laws); *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 58–59 (D. Mass. 1995) ("[L]ater substantial increases in loan loss reserves do[] not provide adequate factual support for a claim that earlier statements of adequate reserves must be attributable to fraud.").

Plaintiffs' post-hoc speculation about the adequacy of earlier reserves—based on later developments in a highly volatile economy and changes in methodology—simply does not support a Section 11 claim against an independent auditor and must be rejected.  *See Fait*, 2010 WL 1883487 at *5.

**2.     Plaintiffs Fail To Allege the Falsity of Wachovia's Statements Related to CDO Valuations.**

Plaintiffs' allegations regarding the valuation of Wachovia's CDO portfolio are similarly deficient, as they too are improperly based on hindsight and relate to matters of opinion. *See Fraternity Fund Ltd.*, 479 F. Supp. 2d at 362 (recognizing that the value of certain securities, such as collateralized mortgage obligations, are "considerably more a statement of opinion than a report of an objectively determinable fact"); *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005) ("[F]inancial valuation models depend so heavily on the discretionary choices of the modeler-including choice of method . . . , choice of assumptions . . . , and choice of 'comparables' that the resulting models and their predictions can only fairly be characterized as subjective opinions"). Plaintiffs allege that Wachovia did not record its CDOs at fair market value. (Am. Compl. ¶¶ 168, 169.) Except for reference to a few inapposite news articles about mortgage defaults,[12] however, Plaintiffs fail to make any allegations that Wachovia (let alone KPMG) had any reason to know that their CDOs were allegedly valued improperly at year-end in 2006 and 2007.

Plaintiffs also allege that GAAP required Wachovia to have written down the value of its CDO holdings in accordance with the ABX and TABX indices. (*See* Am. Compl. ¶ 181.) GAAP, however, plainly does not require—indeed, does not permit—CDOs to be valued based on these indices. SFAS 133 provides that "[d]erivative instruments should be measured at fair value," but it does not provide a method of measurement. *See, e.g.*, Accounting for Derivative Instruments and Hedging Activities, Statement of Fin. Accounting Standards No. 133, ¶ 217(b) (Fin. Accounting Standards Bd. 1998). Nor does SFAS No. 157 require (or permit) CDOs to be

---

[12]  Plaintiffs cite two articles discussing the possibility that, at some time in the future, CDOs backed by subprime mortgages could be at risk due to "easy lending practices." (*See* Am. Compl. ¶¶ 165, 167.) These articles, however, do not suggest that *Wachovia's* CDOs were wrongly valued at the time Wachovia published its 2006 or 2007 financial statements. In any event, news articles are hardly probative of such matters. Such articles can be found to support nearly every conceivable point of view, especially on economic and market issues.

valued based on the ABX and TABX indices.  *See* Fair Value Measurements, Statement of Fin. Accounting Standards No. 157 (Fin. Accounting Standards Bd. 2006).  Like SFAS 133, SFAS No. 157 does not require any specific technique be used as a valuation method.  It states only that "valuation techniques *consistent with* the market approach, income approach, and/or cost approach should be used to measure fair value."  *Id.* ¶ 18 (emphasis added).  Wachovia estimated fair value based on market prices or by using models employing techniques such as discounted cash flow analyses when market prices were not available.  *See* Flood Decl., Ex. A, Ex. 13 at 18. Plaintiffs therefore have not plausibly alleged that the method Wachovia employed to measure fair value as described in its 10-Ks is in violation of GAAP.  They certainly have not alleged a case against Wachovia's independent auditor.

Plaintiffs incorrectly contend the ABX and TABX indices are a reasonable proxy for the decline in value of Wachovia's CDO holdings.  (*See* Am. Compl. ¶ 181.)  But as explained by Markit, the company that created ABX and TABX, it is not appropriate to use these indices to value individual securities, such as CDOs.  *See* Ben Logan, *The ABX Index: A Pricing Conundrum*, CREDIT, May 1, 2008, at 48 ("The ABX may be a standardized and liquid tradable index but it was not designed to be uncritically extrapolated to the broader [Asset Backed Securities] market, and it was certainly not designed as a valuation tool for individual securities.").

It is not enough to allege that a later, lower valuation evidences management error in an earlier, higher estimation of value.  It is doubly unjustified to attribute liability for the independent auditor's conduct in assessing the reasonableness of that earlier management estimate at the earlier time on such a backward-looking basis.  As this District Court recently recognized, "[a]n accurate statement coupled with precise disclosure of risk later realized cannot adequately form the basis of a securities claim."  *Rubin v. MF Global, Ltd.*, 634 F. Supp. 2d 459, 474 (S.D.N.Y. 2009) (internal citation and quotation marks omitted).  Here, in its Form 10-Ks, Wachovia alerted investors to just that risk: that its valuation of its CDO portfolio was

"particularly sensitive" to judgment and estimation. *See* Flood Decl., Ex. A, Ex. 13 at 17; Ex. B, Ex. 13 at 18.

Plaintiffs have failed to plausibly allege facts to show that Wachovia overstated the value of its CDOs at year-end 2006 and year-end 2007, and thus, Wachovia cannot be held liable on that basis. As such, KPMG cannot be held liable either.

### 3. Plaintiffs Fail To Allege the Falsity of Wachovia's Statements Related to Goodwill Accounting.

Plaintiffs fail to state a Section 11 claim against KPMG in relation to Wachovia's goodwill balances as of December 31, 2006 and December 31, 2007. Plaintiffs' goodwill allegations are easily summarized: (1) they generically cite SFAS 141 and 142 (Am. Compl. ¶¶ 202–04); (2) they allege that Wachovia made a substantial write down to its goodwill related to Golden West in the third quarter of 2008 (Am. Compl. ¶¶ 208–09); and (3) they conclusorily allege that Wachovia's goodwill was misstated as of December 31, 2006, and December 31, 2007 for the same reasons as Wachovia's loan loss reserves (Am. Compl. ¶¶ 205–06, 229, 245). These bootstrap allegations fail as a matter of law.[13]

As with the other putative accounting errors at issue, determining goodwill impairment, if any, is fundamentally an accounting estimate and a matter of management judgment— specifically, a judgment as to the present value of assets (business reporting units) for which there is not a readily observable market. Merely pointing to later changes in that estimate therefore cannot support a Section 11 claim. *Fait*, 2010 WL 18834867, at * 4 ("[T]he value of such assets is a matter of judgment and opinion."); *In re Corning Inc. Sec. Litig.*, No. 04-2845-

---

[13] Certain of Plaintiffs' goodwill allegations relate to Wachovia's alleged failure to conduct goodwill impairment testing and record goodwill impairment charges as of March 31, 2007, June 30, 2007, September 30, 2007, and March 31, 2008. (*See, e.g.*, Am. Compl. ¶ 207.) As Plaintiffs admit, however, KPMG did not issue an audit report related to any of Wachovia's quarter-end financial statements, including those cited by Plaintiffs. (Am. Compl. ¶¶ 233, 252.) Thus, even (incorrectly) assuming Wachovia made any false statements in its unaudited financials for those quarters, Plaintiffs cannot state a Section 11 claim against KPMG as to such statements.

CV, 2005 WL 714352 at *2 (2d Cir. Mar. 30, 2005) (affirming district court's dismissal of Section 11 claim based on failure to timely write down goodwill because claim was based on an unactionable business judgment); *see also In re CIT Group, Inc.*, 349 F. Supp. 2d at 189; Flood Decl., Ex. B, Ex. 13 at 33, 75.

The Amended Complaint does not support a conclusion that KPMG had no reasonable basis to believe that Wachovia's goodwill, as estimated by management, was fairly stated under GAAP as of each of the relevant balance sheet dates.  When compared against Wachovia's own Form 10-K disclosures, Plaintiffs' Amended Complaint affirmatively admits that Wachovia's goodwill accounting policies complied with GAAP.  *Compare* Am. Compl. ¶ 202 ("The excess of the purchase price over the fair value of the net assets acquired is recognized as an asset called goodwill."); Am. Compl. ¶ 203 ("Companies must test goodwill annually for impairment and on an interim basis when 'circumstances change that would more likely than not reduce the fair value of a reporting unit below its carrying amount."); Am. Compl. ¶ 204 ("Testing for goodwill impairment is a two-step process.  The first step compares the fair value of a reporting unit with its carrying amount.  If the carrying value of the reporting unit including goodwill exceeds its fair value, then, in the second step, the amount of impairment (i.e., excess over fair value) is determined."), *with* Flood Decl., Ex. B, Ex.13 at 33 ("goodwill . . . is the excess of the purchase price over the fair value of the net assets acquired"); *id.* at 79 ("[Goodwill is] subject to impairment testing on an annual basis, or more often if events or circumstances indicate there may be impairment."); *id.* ("[Goodwill impairment testing] involves assigning tangible assets and liabilities, identified intangible assets and goodwill to reporting units and comparing the fair value of each reporting unit to its carrying amount.  If the fair value is less than the carrying amount, a further test is required to measure the amount of impairment."); *see also* Flood Decl., Ex. A, Ex. 13 at 72 (same).

Wachovia clearly disclosed in its 2007 Form 10-K that "as a result of the market disruption, the excess of the fair value over the carrying value narrowed in reporting units that

include markets-related businesses.  An extended period of further significant market deterioration may impair our goodwill in the future."  Flood Decl., Ex. B, Ex. 13 at 21.

Plaintiffs also do not raise any specific allegation that KPMG lacked a reasonable basis as to its audit opinion as it relates to Wachovia's goodwill accounting.  For example, there is no allegation that KPMG failed to test Wachovia's evaluation of its goodwill for potential impairment as of December 31, 2006 or December 31, 2007; that KPMG departed from professional standards in conducting its testing; or that KPMG learned facts that should have caused it to alter either its testing or its audit conclusions.  At best, Plaintiffs simply disagree with how Wachovia determined whether its goodwill was impaired and to what extent (if any) it was impaired.  Such disagreement is not actionable as a matter of law.  *See In re Corning Inc. Sec. Litig.*, 2005 WL 714352 at *2.

## II.   PLAINTIFFS FAIL TO ALLEGE THAT KPMG MADE ANY STATEMENT RELATED TO TEN OF THE THIRTY OFFERINGS.

Plaintiffs' claims relating to ten of the thirty offerings are precluded because those offerings do not contain any allegedly false statement by KPMG.  Section 11 authorizes a cause of action against an accountant when that "accountant . . .  has . . . prepared or certified any report . . . which is used in connection with [a] registration statement."  15 U.S.C. § 77k(a)(4).  According to Plaintiffs' Schedule of Offerings (*see* Am. Compl. App.), their Section 11 claims are premised in part on securities offerings which did not incorporate any of the allegedly false statements by KPMG.  As discussed above, the face of the Amended Complaint makes clear that KPMG's Section 11 liability—if any—must be limited to its 2006 and 2007 audit reports and the documents into which those reports were incorporated.  The 2006 audit report, the first of those documents, was not issued until February 23, 2007.  (Am. Compl. ¶ 233.)  For this reason, Plaintiffs acknowledge that KPMG only "consented to the inclusion of its 2006 Audit Report in each Offering made *between February 23, 2007 and February 25, 2008*."  (Am. Compl. ¶ 234 (emphasis added).)

KPMG cannot therefore be liable for the ten offerings that predate February 23, 2007.

*See supra* at n.2.  Given Plaintiffs' failure to allege that any of the KPMG statements Plaintiffs contend are false were used in connection with these pre-February 23, 2007 offerings, any claim against KPMG arising out of these ten offerings must be dismissed.

## III.   PLAINTIFFS FAIL TO ALLEGE THEY HAVE STANDING TO PURSUE EIGHTEEN OF THE THIRTY OFFERINGS.

As set forth above, there are eighteen offerings for which the Amended Complaint fails to assert that any named plaintiff purchased or otherwise acquired securities in, or traceable to, those offerings, or that they have suffered any damages.  *See supra* at n.3, n.4.  Plaintiffs thus have utterly failed to establish that they have standing to assert any claim related to these eighteen offerings.  For all of the reasons identified in Section I of the Underwriters' Memorandum of Law in Support of their Motion to Dismiss, which the KPMG Defendants incorporate by reference, *see supra* at n.7, Plaintiffs lack standing to pursue claims arising from these eighteen offerings, and any claims against KPMG concerning those offerings should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Amended Consolidated Class Action Complaint should be dismissed.[14]

---

[14]  Given the amount of time that Plaintiffs have had to investigate and formulate their claims against KPMG, the Court's already having provided Plaintiffs the opportunity to amend the pleadings, and Plaintiffs' decision not to alter their allegations against KPMG in any material way the Court may presume that Plaintiffs have framed the pleading as well as they will ever be able to, and dismissal of the Complaint with prejudice is appropriate.  *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 518 (S.D.N.Y. 1997) (dismissing with prejudice where plaintiffs had "presented nothing to suggest that they could amend the complaint to adequately plead a . . . cause of action") (internal quotations omitted), *aff'd*, 136 F.3d 313 (2d Cir. 1998).

Respectfully submitted,

KPMG LLP

By:   ___/s/ Emmet T. Flood_____

John K. Villa
(jvilla@wc.com)
Steven M. Farina
(sfarina@wc.com)
Emmet T. Flood
(eflood@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Marshall Beil
(mbeil@mcguirewoods.com)
McGUIREWOODS LLP
1345 Avenue of the Americas, Seventh Floor
New York, N.Y.  10105
Telephone: (212) 548-7004

Dated: July 14, 2010                    *Attorneys for Defendant KPMG LLP*