UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                     :

**IN RE WACHOVIA PREFERRED**      :   Master File No. 09 Civ. 6351 (RJS)
**SECURITIES AND BOND/NOTES**  :
**LITIGATION**                         :
                                     :
                                     :
                                     :
------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE <u>AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Underwriter Defendants*

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 4

I.   PLAINTIFFS' CLAIMS REGARDING MOST OF THE OFFERINGS
     SHOULD BE DISMISSED FOR LACK OF STANDING ............................................. 4

     A.   Plaintiffs Do Not Have Standing to Assert Sections 11 and 12(a)(2)
          Claims Regarding Sixteen Offerings in Which They Did Not
          Purchase Any Securities ......................................................................... 5

          1.   Plaintiffs Do Not Have Article III Standing To Assert Claims With
               Respect To  Securities They Did Not Purchase ......................................... 5

          2.   Plaintiffs Do Not Have Statutory Standing To Assert
               Sections 11 and 12(a)(2) Claims With Respect to Securities
               They Did Not Purchase .............................................................................. 9

     B.   The Complaint's Additional Plaintiffs Do Not Cure the Complaint's
          Standing Deficiencies ........................................................................... 11

          1.   Livonia Is Not a Proper Plaintiff in this Action ....................................... 12

          2.   The Claims of Livonia and Iron Workers are Time-Barred .................... 12

     C.   Plaintiffs May Not Assert Claims Based on Secondary Market
          Purchases Made After Supplemental Offerings ..................................... 15

          1.   Plaintiffs May Not Assert Section 11 Claims Arising From Purchases
               Following the Supplemental Offerings ..................................................... 16

          2.   Plaintiffs May Not Assert Section 12(a)(2) Claims Arising From
               Secondary Market Purchases ................................................................. 18

II.  THE COMPLAINT FAILS TO STATE A SECTION 12(a)(2)
     CLAIM AGAINST THE UNDERWRITER DEFENDANTS ......................................... 19

III. PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS
     OR OMISSIONS ................................................................................................ 21

     A.   Plaintiffs Fail to Plead the Sections 11 and 12(a)(2)
          Claims with Particularity ...................................................................... 21

     B.   Plaintiffs Fail to Allege Actionable Misstatements or
          Omissions in the Offering Materials Under Any Standard................... 24

CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009)...................................................................................7, 8

Akerman v. Oryx Commc'ns, Inc.,
  810 F.2d 336 (2d Cir. 1987).....................................................................................................9

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009).....................................................................................................21, 24

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007)........................................................................................................4

Barnes v. Osofsky,
  373 F.2d 269 (2d Cir. 1967).................................................................................................9, 17

Basic, Inc. v. Levinson,
  485 U.S. 224 (1988)................................................................................................................24

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................................... 23-24

City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortgage Loan Trust, Inc.,
  No. CV 08-1418 (LDW), 2010 WL 1371417 (E.D.N.Y. Apr. 6, 2010)..................... 5-6, 8, 11

Coronel v. Quanta Capital Holdings Ltd.,
  No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)...................................23

Dartley v. ErgoBilt Inc.,
  No. Civ. A. 398CV1442M, 2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ............................20

DeMaria v. Andersen,
  318 F.3d 170 (2d Cir. 2003)....................................................................................................16

Garber v. Legg Mason, Inc.,
  537 F. Supp. 2d 597 (S.D.N.Y. 2008).....................................................................................24

Grand Lodge of Pa. v. Peters,
  550 F. Supp. 2d 1363 (M.D. Fla. 2008)............................................................................. 16-17

Gustafson v. Alloyd Co., Inc.,
  513 U.S. 561 (1995)............................................................................................................ 18-19

Hoffman v. UBS-AG,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008)......................................................................................5

In re Airgate PCS, Inc. Sec. Litig.,
    389 F. Supp. 2d 1360 (N.D. Ga. 2005) ...................................................................20

In re Alcatel Sec. Litig.,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005) .....................................................................22

In re AOL Time Warner, Inc. Sec. & ERISA Litig.,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) ............................................................5, 7, 19

In re Broderbund/Learning Co. Sec. Litig.,
    294 F.3d 1201 (9th Cir. 2002) ..................................................................................7

In re Century Aluminum Co. Sec. Litig.,
    No. C 09-1001 (SI), 2010 WL 1729426 (N.D. Cal. Apr. 27, 2010) ......................16, 17, 18, 20

In re CIT Group, Inc. Sec. Litig.,
    349 F. Supp. 2d 685 (S.D.N.Y. 2004) .....................................................................24

In re Citigroup Inc. Bond Litig.,
    08 Civ. 9522 (SHS), at 26-28 (S.D.N.Y. July 12, 2010) ........................................11

In re Colonial Limited P'ship Litig.,
    854 F. Supp. 64 (D. Conn. 1994) ...................................................................13, 14-15

In re Cosi, Inc. Sec. Litig.,
    379 F. Supp. 2d 580 (S.D.N.Y. 2005) .....................................................................19

In re Countrywide Financial Sec. Litig.,
    588 F. Supp. 2d 1132, 1162 (C.D. Cal. 208) .........................................................11

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) .....................................................................20

In re Fuwei Films Sec. Litig.,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009) .....................................................................19

In re IAC/InterActiveCorp Sec. Litig.,
    No. 04 Civ. 7447 (RJH), 2010 WL 996483 (S.D.N.Y. Mar. 19, 2010) ..................22

In re Initial Public Offering Sec. Litig.,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) .......................................................................7

In re Lehman Bros. Sec. & ERISA Litig.,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) .......................................................5, 6, 7, 8, 11

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................20, 24

In re N2K, Inc. Sec. Litig.,
    82 F. Supp. 2d 204 (S.D.N.Y. 2000) .......................................................................22

In re Orion Sec. Litig.,
    No. 08 Civ. 1328 (RJS), 2009 WL 2601952 (S.D.N.Y. Aug. 20, 2009) ................9, 10, 20, 21

In re Royal Ahold N.V. Sec. & ERISA Litig.,
    351 F. Supp. 2d 334 (D. Md. 2004) ...................................................................................20

In re Wells Fargo Mortgage-Backed Certificates Litig.,
    No. C 09-01376 (SJ), 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010).....................7, 11, 19, 20

J & R Mktg., SEP v. Gen. Motors Corp.,
    No. 06-10201, 2007 WL 655291 (E.D. Mich. Feb. 27, 2007)...............................................10

Krim v. pcOrder.com, Inc.,
    402 F.3d 489 (5th Cir. 2005) ...........................................................................................17

Kruse v. Wells Fargo Home Mortgage, Inc.,
    No. 02-cv-3089 (ILG), 2006 WL 1212512 (E.D.N.Y. May 3, 2006)....................................13

Ladmen Partners, Inc. v. Globalstar, Inc.,
    No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)........................ 22-23

Lewis v. Casey,
    518 U.S. 343 (1996)...........................................................................................................5

Livonia Employees Ret. Sys. v. Wachovia,
    09-civ-8268 (S.D.N.Y. filed Sept. 29, 2009) ..................................................................12, 13

Lorber v. Beebe,
    407 F. Supp. 279 (S.D.N.Y. 1976).....................................................................................16

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)...........................................................................................................5

McFarland v. Memorex Corp.,
    493 F. Supp. 631 (N.D. Cal. 1980) ...................................................................................16

Metz v. United Counties Bancorp,
    61 F. Supp. 2d 364 (D.N.J. 1999) .....................................................................................20

NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 08 Civ. 10783 (MGC),
    Hr'g Tr. at 40:11-41:13 (S.D.N.Y. Jan. 28, 2010) ......................................................9, 10, 11

N.J. Carpenters Health Fund v. DLJ Mortgage Capital, Inc.,
    No. 08 CIV 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010)............................6, 21

N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC,
    No. 08 CV 5093 (HB), 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ...........................7, 8, 11

Novak v. Kasaks,
    216 F.3d 300 (2d Cir. 2000)..............................................................................................23

Ong ex rel. Ong IRA v. Sears, Roebuck & Co.,
    388 F. Supp. 2d 871 (N.D. Ill. 2004) ...............................................................9, 11

Palmer v. Stassinos,
    236 F.R.D. 460 (N.D. Cal. 2006) ............................................................................13

Panther Partners, Inc. v. Ikanos Commc'ns, Inc.,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ....................................................................24

Plumbers' Union Local No. 12 Pension Fund v. Nomura,
    658 F. Supp. 2d 299 (D. Mass. 2009) .......................................................10, 11, 21

Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.,
    No. 08 CV 10841 (JSR), 2010 WL 2175875 (S.D.N.Y. June 1, 2010)........... 7, 8-9, 15, 19, 21

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)......................................................................21, 22, 23

Schoenhaut v. Am. Sensors, Inc.,
    986 F. Supp. 785 (S.D.N.Y. 1997)...........................................................................22

Stevelman v. Alias Research Inc.,
    174 F.3d 79 (2d Cir. 1999).......................................................................................23

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)...................................................................................................4

**STATUTES**

15 U.S.C. § 77b(a)(8)........................................................................................................10

15 U.S.C. § 77f(a) .............................................................................................................10

15 U.S.C. § 77k..............................................................................................................9, 17

15 U.S.C. § 77l(a)(2) ................................................................................................ passim

15 U.S.C. § 77m...............................................................................................................12

**RULES**

17 C.F.R. § 229.512(a)(2) ............................................................................................ 10-11

17 C.F.R. § 230.430B(f)(2)..............................................................................................10

Fed. R. Civ. P. 8(a) ...........................................................................................................23

Fed. R. Civ. P. 9(b) .................................................................................................. passim

Fed. R. Civ. P. 12(b)(1)......................................................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1

Pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Underwriter Defendants[1] respectfully submit this memorandum of law in support of their motion to dismiss the Amended Consolidated Class Action Complaint ("Complaint" or "Compl.").[2]

## PRELIMINARY STATEMENT

Plaintiffs' amendments do not resolve the Complaint's threshold defects.  Plaintiffs, who purchased securities shortly before or in the midst of the unprecedented collapse of the housing and mortgage markets, continue to assert a putative class action on behalf of purchasers of thirty separate public offerings of bonds, notes and preferred securities by Wachovia Corp. ("Wachovia") between July 31, 2006 and May 29, 2008 (collectively, the "Offerings"). Plaintiffs allege that the materials for all thirty Offerings failed to disclose Wachovia's "lax loan underwriting, tens of billions of dollars of exposure to high risk subprime mortgages, woefully inadequate loan loss reserves and large undisclosed holdings of 'toxic' subprime-backed securities."  (Compl. ¶ 1.)[3]  The Complaint should be dismissed as against the group of twenty underwriters[4] who, without differentiation, Plaintiffs allege participated in those Offerings, for several reasons.

*First*, as a threshold matter, Plaintiffs do not have standing to assert claims with respect to *eighteen* of the Offerings.  While the Complaint asserts claims relating to thirty separate and distinct Offerings, no plaintiff claims to have purchased securities in *sixteen* of those thirty Offerings.  It is indisputable that a plaintiff may not assert claims under Sections 11 and 12 of the

---

[1] A list of the moving Underwriter Defendants is attached hereto as Exhibit A.

[2] The Underwriter Defendants adopt the arguments set forth in the Wachovia Defendants' Memorandum of Law in Support of the Motion to Dismiss the Complaint ("Wachovia Mem."), to the extent those arguments apply to the claims asserted against the Underwriter Defendants.

[3] A true and correct copy of the Complaint is attached to the Affidavit of A. Robert Pietrzak, sworn to on July 14, 2010 ("Pietrzak Aff."), as Exhibit A.

[4] Pursuant to a stipulation dated November 2, 2009, Plaintiffs dismissed 55 underwriters without prejudice in exchange for a tolling agreement.

Securities Act of 1933 (the "Securities Act") for losses in securities that it never purchased. Furthermore, Plaintiffs cannot establish standing to assert claims with respect to an additional two of the thirty offerings because their only purchases of those securities occurred in the secondary market following supplemental offerings.  As a result, Plaintiffs cannot possibly trace their purchases to a particular registration statement, as required to state a Section 11 claim, and they cannot assert a Section 12 claim because they did not purchase those securities in a public offering.

Nor does the belated addition of three plaintiffs, Iron Workers Locals 40, 361, 417 Union Security Funds ("Iron Workers"); Hawaii Sheet Metal Workers Pension Fund ("Hawaii"); and the City of Livonia Employees' Retirement System ("Livonia") (collectively, "Additional Plaintiffs") that were not parties to the prior consolidated amended complaint filed on September 4, 2009 ("Prior Complaint")[5] cure the standing deficiencies.  Plaintiffs concede that, at a minimum, they were on inquiry notice concerning the "extent of decay at Wachovia relating to its mortgage-related assets" by September 28, 2008.  (Compl. ¶ 6.)  Thus, under the statute of limitations governing Sections 11 and 12 claims, Plaintiffs should have brought their claims within one year, or by September 28, 2009.  However, the Additional Plaintiffs were not added to the Complaint until May 28, 2010 – eight months too late.  Because no prior Plaintiff had standing to assert claims with respect to certain of the Offerings, the Additional Plaintiffs' claims are not tolled.  Accordingly, Plaintiffs' attempt to manufacture standing with respect to certain Offerings through the untimely addition of new named plaintiffs must be rejected.

---

[5] Livonia previously filed its own complaint that was identical to the Prior Complaint on September 29, 2009 ("Livonia Complaint").  For the reasons set forth infra at Section I(B), the addition of Livonia, and the other Additional Plaintiffs, to this action is improper. While the Underwriter Defendants address some of Livonia's claim deficiencies in this action, they reserve all rights to separately move to dismiss the claims set forth in the Livonia Complaint in accordance with this Court's December 11, 2009 Order.

*Second*, the Section 12(a)(2) claim should be dismissed even as to the twelve remaining Offerings because Plaintiffs do not allege to have purchased securities in those Offerings from any of the Underwriter Defendants.

*Third*, while the Complaint is predicated on an alleged fraudulent scheme in which all of the nearly fifty defendants – Wachovia, its officers and directors, independent auditor and the underwriters – hid from Plaintiffs the quality of the residential mortgage loans that Wachovia underwrote, it utterly fails to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs' effort to evade these requirements with a boilerplate disclaimer that their claims do not "sound in fraud," is unavailing.  The core of Plaintiffs' claims is the general assertion that all defendants knew about Wachovia's allegedly lax underwriting standards and that the Pick-a-Pay portfolio was not of "pristine quality," but failed to disclose this information in the Offering materials.  Yet Plaintiffs do not allege knowledge by any of the Underwriter Defendants of the alleged scheme, and they do not differentiate between the defendants as to the alleged nature or timing of their involvement in the scheme.  This is plainly insufficient.

*Finally*, and in all events, regardless of whether the Complaint sounds in fraud, Plaintiffs entirely fail to identify any actionable misstatements or omissions.  As set forth in detail in Wachovia's Memorandum, the Offering materials unequivocally warned investors of the risks associated with Wachovia's Offerings.  That the entire housing market unexpectedly imploded and, as a result, that those disclosed risks came to fruition, does not, as a matter of law, constitute violations of the securities laws.

**ARGUMENT**[6]

## I.    PLAINTIFFS' CLAIMS REGARDING MOST OF THE OFFERINGS SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiffs purport to assert Sections 11 and 12(a)(2) claims against all of the Underwriter Defendants for misrepresentations and omissions allegedly contained in the Offering materials for thirty separate public offerings of securities issued by several different entities and underwritten by different syndicates.  The different types of securities range from trust preferred securities with different fixed and floating interest rates issued by distinct Wachovia-related trusts, to notes with different interest rates and different redemption dates, issued by Wachovia Corporation.  (See Compl. at 1 & Appx.)  Plaintiffs lump together all thirty offerings and generically refer to the "Offerings," the "Offering Materials," and the "Bond Class Securities" in the Complaint despite the fact that they did not purchase securities in or traceable to *eighteen* of the thirty Offerings.

With respect to sixteen of the eighteen Offerings, Plaintiffs simply never purchased those particular bonds and notes, and thus, do not have standing to assert Sections 11 and 12(a)(2) claims with respect to those securities.  Plaintiffs' belated addition of the three Additional Plaintiffs does not fix the problem with respect to any of the sixteen Offerings.  Only Livonia and Iron Workers purchased securities that no prior plaintiff had purchased.  As set forth infra at Section I(B), however, their inclusion here does not create standing where none exists.

---

[6] The relevant factual allegations are drawn from the allegations of the Complaint, which are accepted as true for the purposes of this motion only. "[O]ther sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss [include], in particular, documents incorporated into the complaint by reference . . . ." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (court may consider "statements or documents incorporated into the complaint by reference").

Furthermore, with respect to two additional Offerings, Plaintiffs purchased these securities in the secondary market following *supplemental offerings.*  These purchases cannot  be traced to a specific registration statement for purposes of a Section 11 claim, and were not purchased directly *in* a public offering, as required for a Section 12(a)(2) claim.[7]

### A.    Plaintiffs Do Not Have Standing to Assert Sections 11 and 12(a)(2) Claims Regarding Sixteen Offerings in Which They Did Not Purchase Any Securities

Standing is an indispensable prerequisite for pleading a claim.  See Lewis v. Casey, 518 U.S. 343, 349 (1996); In re Lehman Bros. Sec. & ERISA Litig., 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010).  "The burden to establish standing rests on the party asserting its existence."  In re AOL Time Warner, Inc. Sec. & ERISA Litig., 381 F. Supp. 2d 192, 245 (S.D.N.Y. 2004) (citation and quotations omitted).  To establish a claim under Sections 11 or 12(a)(2) of the 1933 Act, a plaintiff must establish standing both as a constitutional matter under Article III and under the dictates of those statutes.  Id.

### 1.    Plaintiffs Do Not Have Article III Standing To Assert Claims With Respect To  Securities They Did Not Purchase

Plaintiffs cannot satisfy the constitutional standing requirements of Article III for claims relating to Offerings in which they did not purchase securities.  To demonstrate Article III standing, Plaintiffs must allege, among other things, that they "suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted); see Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 530-31 (S.D.N.Y. 2008) ("A plaintiff must plead that he 'personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'") (quoting Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 100 (1979)); City of Ann Arbor Employees' Ret. Sys. v. Citigroup

---

[7] Attached as Exhibit A to the Underwriter Defendants' Notice of Motion is a chart summarizing the grounds for dismissing each of the Offerings.

<u>Mortgage Loan Trust, Inc.</u>, No. CV 08-1418 (LDW), 2010 WL 1371417, at *7 (E.D.N.Y. Apr. 6, 2010); <u>In re Lehman Bros.</u>, 684 F. Supp. 2d at 490 ("Standing is a threshold constitutional requirement that mandates an allegation of injury traceable to the conduct of which plaintiffs complain."). Because a plaintiff cannot possibly demonstrate that he suffered any injury in connection with securities that he never purchased, he "lacks standing to sue on claims arising from . . . offerings which he did not purchase." <u>N.J. Carpenters Health Fund v. DLJ Mortgage Capital, Inc.</u>, No. 08 CIV 5653 (PAC), 2010 WL 1473288, at *3 (S.D.N.Y. Mar. 29, 2010).

Here, conspicuously absent from the Complaint and Plaintiffs' sworn certifications are any allegations that any plaintiff purchased and acquired securities issued in sixteen of the thirty Offerings in question.  Those sixteen Offerings are:

- 7/31/06 Three-Month LIBOR Floating Rate Notes Due August 1, 2013
- 7/31/06 5.70% Notes Due August 1, 2013 ("5.70% Notes")
- 10/23/06 Three-Month LIBOR Floating Rate Notes Due October 15, 2011
- 10/23/06 5.30% Notes Due October 15, 2011 ("5.30% Notes")
- 10/23/06 Three-Month LIBOR Floating Rate Subordinated Noted Due October 15, 2006
- 2/12/07 The 10/23/06 Three-Month LIBOR Floating Rate Notes Due October 15, 2011 Offering (Supplemental)
- 2/12/07 The 10/23/06 5.30% Notes Due October 15, 2011 Offering (Supplemental)
- 6/8/07 Three-Month LIBOR Floating Rate Notes Due June 15, 2007 ("5.75% Notes")
- 6/8/07 5.75% Note Offering [$1,350,000,000]
- 6/8/07 5.75% Note Offering (Supplemental) [$250,000,000]
- 6/8/07 5.75% Note Offering (Supplemental) [$350,000,000]
- 7/26/07 Three-Month LIBOR Floating Rate Notes Due July 26, 2010
- 8/20/07 Three-Month LIBOR Floating Rate Notes Due August 20, 2009
- 11/14/07 The 7/31/06 5.70% Notes Due August 1, 2013 Offering (Supplemental)
- 11/27/07 Three-Month LIBOR Floating Rate Notes Due November 24, 2009 [$850 million]
- 11/27/07 Three-Month LIBOR Floating Rate Notes Due November 24, 2009 [$260 million]

(See generally Compl. ¶ 1 & Appx.)  Because Plaintiffs do not allege that they purchased the securities issued in any of these sixteen Offerings, they cannot allege any injury resulting from those Offerings.[8]

Plaintiffs' purported representation of a class of persons who allegedly acquired securities in all thirty Offerings does not resuscitate their deficient claims.  Indeed, "that a suit may be a class action . . .  adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., No. 08 CV 10841 (JSR), 2010 WL 2175875, at *3 (S.D.N.Y. June 1, 2010) (internal citation and quotation omitted); see also N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC, No. 08 CV 5093 (HB), 2010 WL 1172694, at *8 (S.D.N.Y. Mar. 26, 2010) ("Plaintiffs need to show an injury connected to the offerings they challenge as misleading, and therefore Plaintiffs' claims with regard to offerings they did not purchase are dismissed for lack of standing."); In re Lehman Bros., 684 F. Supp. at 490 ("[Standing] cannot be dispensed with by

---

[8] Orange County Employees' Retirement System ("Orange County") -- the only lead or named Plaintiff alleged in the Prior Complaint to have purchased the 4/25/08 5.50% Fixed Rate Notes Due May 1, 2013 ("5.50% Fixed Rate Notes") either in or traceable to the initial offering -- cannot establish an actual injury based on its purchase because it ultimately sold the notes at a profit.  (Prior Compl., Ex. A.)  As set forth in its certification, Orange County purchased the above-referenced notes on April 22, 2008 in the face amount of $200,000, but at a price *below par value.*  (Id.)  Subsequently, on May 22, 2009, Orange County sold the notes in the face amount of $200,000 at a price *above par value*.  Thus, Orange County has no loss, and did not suffer any injury.  "A putative class representative lacks standing to bring a claim if it did not suffer the injury that gives rise to that claim."  Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155, 169 (S.D.N.Y. 2009).  Nor, as set forth infra at Section I(B), does the belated addition of Iron Workers -- alleged to have purchased the 5.50% Fixed Rate Notes -- change the analysis.  Accordingly, Plaintiffs' Sections 11 and 12(a)(2) claims based upon the 5.50% Fixed Rate Notes should be dismissed for this additional reason.  See, e.g., In re Broderbund/Learning Co. Sec. Litig., 294 F.3d 1201, 1203-05 (9th Cir. 2002); In re AOL Time Warner, 381 F. Supp. 2d at 246-47; In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003).

styling the complaint as a class action."); In re Wells Fargo Mortgage-Backed Certificates Litig.,

No. C 09-01376 (SJ), 2010 WL 1661534, at *3 (N.D. Cal. Apr. 22, 2010) ("[C]ourts considering

class action complaints under Section 11 have overwhelmingly held that the lead plaintiffs

named in the complaint lack standing to challenge any offering through which no lead plaintiff

actually purchased a security."); Abu Dhabi Commercial Bank, 651 F. Supp 2d at 175 (same).

    Several recent decisions in which courts dismissed Sections 11 and 12 claims for lack of

standing are instructive.  In New Jersey Carpenters Vacation Fund, named plaintiffs brought

claims related to fifteen offerings despite only having purchased securities in only two of these

offerings.  2010 WL 1172694, at *7.  The court refused to recognize standing, however, for the

thirteen offerings in which no named plaintiff purchased securities, and dismissed the related

claims, noting, "the harm Plaintiffs may have suffered based on misstatements in the Offering

Documents for the Certificates they purchased has no bearing on any harm suffered by other

investors based on alleged misstatements in other offering documents with details about other

offerings that Plaintiffs did not purchase."  Id.  In City of Ann Arbor Employees' Retirement

System, plaintiffs alleged securities law violations in connection with their purported purchase of

securities in eighteen real estate trusts containing mortgage-backed securities.  2010 WL

1371417, at *7.  In dismissing the Section 11 claim, the court found that plaintiffs only

purchased securities in two of the eighteen offerings and held that plaintiffs' failure to purchase

securities in the other offerings "precludes Constitutional standing because, with respect to the

sixteen Trusts not purchased, Plaintiffs have suffered no injury that is traceable."  Id.  Further, in

In re Lehman Bros., the court found that because "[n]amed plaintiffs have purchased in nine of

the ninety-four offerings," which were offered pursuant to two shelf registration statements,

"[t]hey have not alleged any personal injury stemming from the other eighty-five" ... and "[t]hey

therefore have no standing to assert those claims." 684 F. Supp. 2d at 491.  The court in Public

<u>Employees' Retirement System of Mississippi</u> agreed, and held that plaintiffs "have no standing

to assert claims in relation to 'funds in which [plaintiffs] did not personally invest.'"  2010 WL

2175875, at *3 (citation omitted).[9]

**2.    Plaintiffs Do Not Have Statutory Standing To Assert Sections 11 and 12(a)(2) Claims With Respect to Securities They Did Not Purchase**

The plain language of Sections 11 and 12 likewise precludes Plaintiffs from asserting

claims for losses in securities that they never purchased or acquired.

Section 11 expressly limits recovery to "any person acquiring such security."  15 U.S.C.

§ 77k(a).  Thus, statutory standing under Section 11 is limited to plaintiffs who have alleged,

among other things, that they themselves purchased or acquired the securities in question.  <u>See</u>

<u>Barnes v. Osofsky</u>, 373 F.2d 269, 273 (2d Cir. 1967) ("[A]n action under § 11 may be

maintained 'only by one who comes within a narrow class of persons, <u>i.e.</u>, those who purchase

securities that are the direct subject of the prospectus and registration statement.'") (citation

omitted); <u>Ong ex rel. Ong IRA v. Sears, Roebuck & Co.</u>, 388 F. Supp. 2d 871, 891-92 (N.D. Ill.

2004) ("To have standing to sue for a violation of § 11 . . . a plaintiff must have purchased

securities that are the 'direct subject' of the allegedly defective registration statement.").

Section 12(a)(2) likewise expressly limits recovery to "the person purchasing such

security."  15 U.S.C. § 77l (a)(2); <u>see also</u> <u>Akerman v. Oryx Commc'ns, Inc.</u>, 810 F.2d 336, 344

(2d Cir. 1987) ("Section 12 imposes liability on persons who offer or sell securities and only

grants standing to 'the person purchasing such security' from them.") (citation omitted); <u>In re</u>

<u>Orion Sec. Litig.</u>, No. 08 Civ. 1328 (RJS), 2009 WL 2601952, at *2 (S.D.N.Y. Aug. 20, 2009)

(Sullivan, J.) (dismissing Section 12(a)(2) claim because plaintiffs failed to allege that

defendants "sold, or successfully solicited sales of, . . . shares *to Plaintiff*") (emphasis in

---

[9] <u>See</u> <u>also</u> <u>NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.</u>, 08 Civ. 10783
(MGC), Hr'g Tr. at 40:5-41:20 (S.D.N.Y. Jan. 28, 2010) (attached to Pietrzak Aff. as Ex. C).

9

original); NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 08 Civ. 10783 (MGC), Hr'g Tr. at 40:11-41:13 (S.D.N.Y. Jan. 28, 2010) ("Section 12(a)(2) limits claims based on sellers' misstatements in the sale of a security to the person purchasing such security.").

Thus, it is axiomatic that under Sections 11 and 12, "named plaintiffs are incompetent to allege an injury caused by the purchase of [securities] that they themselves never purchased." Plumbers' Union Local No. 12 Pension Fund v. Nomura, 658 F. Supp. 2d 299, 303 (D. Mass. 2009); see also In re Orion, 2009 WL 2601952, at *2; J & R Mktg., SEP v. Gen. Motors Corp., No. 06-10201, 2007 WL 655291, at **4-5 (E.D. Mich. Feb. 27, 2007) (dismissing Section 11 and 12(a)(2) claims on behalf of purported class for offerings in which named plaintiffs did not purchase securities). Here, the named or lead Plaintiffs never purchased securities issued in sixteen Offerings, and therefore, lack standing to assert Sections 11 and 12 claims as to those Offerings.

Despite Plaintiffs' assertions to the contrary, the allegation that all thirty Offerings were made pursuant to five shelf registration statements does not alter the analysis. (See Compl. ¶ 1.) This is because Section 11 liability cannot attach to a shelf registration statement until securities are actually offered for sale by means of a final prospectus. See 17 C.F.R. § 230.430B(f)(2). Under the plain language of the Securities Act, "[a] registration statement shall be deemed effective only as to the securities specified therein as proposed to be offered," 15 U.S.C. § 77f(a), and a shelf registration statement is *not* a "final prospectus." See 17 C.F.R. § 230.430B(f)(2) (emphasis added); see also 15 U.S.C. § 77b(a)(8) (defining "registration statement" to include any prospectus, prospectus supplement, or other document "filed as part of such statement or incorporated therein by reference"). Indeed, "for the purpose of determining any liability under the [1933] Act, each . . . post-effective amendment [to a shelf registration statement, such as a prospectus supplement] shall be deemed to be *a new registration statement*

relating to the securities offered therein."  17 C.F.R. § 229.512(a)(2) (emphasis added).

Accordingly, Plaintiffs cannot manufacture standing to bring claims based on securities they did

not purchase by relying on purchases of other securities under the same shelf registration

statement.  See, e.g., City of Ann Arbor Employees' Ret. Sys., 2010 WL 1371417, at *8 (finding

that "standing [is not] conferred by virtue of a common registration statement"); N.J. Carpenters

Vacation Fund, 2010 WL 1172694, at *7; In re Lehman Bros., 684 F. Supp. 2d at 491;  In re

Wells Fargo, 2010 WL 1661534, at **4-5; Nomura, 658 F. Supp. 2d at 303-04; Ong, 388 F.

Supp. 2d at 876, 890-92.[10]

## B.    The Complaint's Additional Plaintiffs Do Not Cure the Complaint's Standing Deficiencies

Plaintiffs' inclusion of three Additional Plaintiffs in the amended Complaint does not fix

the standing defects.  As an initial matter, Livonia, represented by the same plaintiffs' counsel,

has already filed a separate complaint for the same alleged violations and thus should not have

been added as a named Plaintiff.  Second, the claims alleged by Iron Workers and  Livonia as to

those Offerings in which no prior plaintiff purchased securities should be dismissed as time-

barred.[11]

---

[10] But see In re Citigroup Inc. Bond Litig., 08 Civ. 9522 (SHS), at 26-28 (S.D.N.Y. July 12, 2010) (finding that plaintiffs had standing to assert Section 11 claim even as to securities they did not purchase on the grounds that those securities were issued pursuant to the same shelf registration statement as purchased securities). In reaching its decision on standing, the court in In re Citigroup relies on In re Countrywide Financial Securities Litig., 588 F. Supp. 2d 1132, 1162 (C.D. Cal. 2008), a decision that has been rejected by other courts in this District and elsewhere. See, e.g., NECA-IBEW Health & Welfare Fund, Tr. at 6-7, 40-41 (stating that Countrywide is a heavily "criticized case" that is "essentially [a] deviation from the usual rule of standing"); In re Lehman Bros, 684 F. Supp. 2d at 491; In re Wells Fargo, 2010 WL 1661534, at **4-5.

[11] Hawaii is not alleged to have purchased securities in any of the Offerings for which Plaintiffs lack standing and thus, its addition as a plaintiff does not affect the Complaint's standing defects.

### 1.    Livonia Is Not a Proper Plaintiff in this Action

On September 29, 2009, Livonia filed an identical complaint to the Prior Complaint and alleged the same Sections 11 and 12(a)(2) claims for the same thirty offerings.  See Livonia Employees Ret. Sys. v. Wachovia, 09-civ-8268 (S.D.N.Y. filed Sept. 29, 2009) (Sullivan, R.). Livonia asserted that action was automatically consolidated with this action.  See November 16, 2009 letter from Livonia's counsel to the Court. (Pietrzak Aff., Ex. B.)  The Wachovia Defendants, Underwriter Defendants and KPMG opposed consolidation for several reasons.  On December 11, 2009, the Court declined to consolidate the Livonia action with the current action, and held that, after briefing was completed and a decision was issued in connection with the current action, defendants may move to dismiss the Livonia Complaint on statute of limitations grounds and other grounds unique to that action.  See December 11, 2009 Order (Docket # 10).

Now, in a bald attempt to evade the Court's December 11, 2009 Order, Plaintiffs have attempted to add Livonia as a named Plaintiff in this action, and, in effect, unilaterally and without court authorization, consolidate the Livonia Complaint with the Complaint in this action. Livonia should not get two bites at the apple, and its end run around the December 2009 Order must be rejected.

### 2.    The Claims of Livonia and Iron Workers are Time-Barred

Even if Livonia had been properly added as a Plaintiff, Livonia's claims, as well as the majority of the claims of Iron Workers, are time-barred.  Accordingly, the inclusion of the Additional Plaintiffs does not save the claims regarding the Offerings in which they allegedly purchased securities.

Claims under the Securities Act are timely if brought "within one year after the discovery of the untrue statement or the omission, or after such discovery could have been made by the exercise of reasonable diligence" and no more than "three years after the security was bona fide offered to the public."  15 U.S.C. § 77m.  By Plaintiffs' own admission, the "extent of the decay

at Wachovia related to its mortgage-related assets" became apparent on September 28, 2008,

"when the Government brokered a deal to sell Wachovia to Citigroup for $1.00 per share."

(Compl. ¶ 6.)  Therefore, at a minimum, Plaintiffs were on notice as of September 28, 2008, and

thus, their claims relating to Wachovia's mortgage-related assets should have been filed no later

than one year later, or September 28, 2009.  Plaintiffs Iron Workers and Livonia, however, were

not added to the current Complaint until May 28, 2010 – after the one year statute of limitations

expired.[12]

Any attempt by Iron Workers and Livonia to argue that the filing of the Prior Complaint

on September 4, 2009 tolled the statute of limitations must be rejected.  While "the filing of a

class action complaint tolls the statute of limitations for all class members," it is well-established

that "if the original plaintiffs *lacked standing* to bring their claims in the first place, the filing of

a class action complaint does *not* toll the statute of limitations for other members of the

purported class."  See In re Colonial Limited P'ship Litig., 854 F. Supp. 64, 82 (D. Conn. 1994)

(emphasis added) (dismissing time-barred claims); see also Kruse v. Wells Fargo Home

Mortgage, Inc., No. 02-cv-3089 (ILG), 2006 WL 1212512, at *5 (E.D.N.Y. May 3, 2006) ("there

appears to be no good reason to encourage the bringing of a suit merely to extend the period in

which to find a class representative") (quoting In re Crazy Eddie Sec. Litig., 747 F. Supp. 850,

856 (E.D.N.Y. 1990)); Palmer v. Stassinos, 236 F.R.D. 460, 465 n.6 (N.D. Cal. 2006) ("it would

be beyond the constitutional power of a federal court to toll a period of limitations based on a

claim that failed because the claimant had no power to bring it").

---

[12] Even if Plaintiff Livonia were to have the benefit of the filing date of City of Livonia
Employees' Retirement System v. Wachovia Corp., 09-civ-8268, its claims are still time-barred.
The Livonia Complaint was filed on September 29, 2009. Thus, Livonia missed the one-year
statute of limitations, as will be more fully set forth in a separate motion to dismiss that
complaint in accordance with the Court's December 11, 2009 Order.

Livonia alleges that it purchased the 5.75% Notes, for which the initial offering was on June 8, 2007 and supplemental offerings occurred on September 17, 2007 and December 18, 2007, on January 11, 2008.  No named or lead Plaintiff, however, was alleged to have purchased the 5.75% Notes in the Prior Complaint.  Thus, because no named or lead Plaintiff had standing to allege losses in connection with those Offerings, the statute of limitations is not tolled for purchasers of the 5.75% Notes.

Nor is the statute of limitations tolled for purchasers of the 5.50% Fixed Rate Notes, the 5.30% Notes or the 5.70% Notes.  Though the Complaint alleges that Iron Workers purchased the 5.30% and 5.70% Notes, in the Prior Complaint, no plaintiff was alleged to have purchased securities in these Offerings, and thus, no prior plaintiff had standing to allege losses in connection thereto.  Orange County Employees' Retirement System, the only plaintiff alleged in the Prior Complaint to have purchased the 5.50% Fixed Rate Notes, sold the notes *at a profit.*[13] Because Orange County Employees' Retirement System did not suffer an injury, it lacks standing to assert claims with respect to the offering of the Fixed Rate Notes.  Accordingly, the statute of limitations is not tolled for purchasers of the 5.50% Fixed Rate Notes, the 5.30% Notes or the 5.70% Notes.[14]

Thus, with respect to the notes purportedly purchased solely by Iron Workers and Livonia, because no previous Plaintiff had standing to bring claims in connection with those Offerings, the statute of limitations is not tolled, and claims relating to those Offerings are time-barred.  See In re Colonial Limited, 854 F. Supp. 64 (finding that because the lead plaintiff did

---

[13] See supra fn at 7.  While the Prior Complaint alleged that Louisiana Sheriffs purchased the 5.50% Fixed Rate Notes, it did so in the secondary market and thus cannot trace its purchases to a particular registration statement.  See infra at 16-18.

[14] Even if Iron Workers are found to have timely asserted claims with respect to the 5.30% and 5.70% Note Offerings (they have not), they sold all of the Notes at a profit and their claims should be dismissed for this additional reason.  See Iron Workers' Certification (Docket #103).

not have standing with respect to certain partnerships, intervenors would not get the benefit of tolling, and their claims would be dismissed); Palmer, 236 F.R.D. at 465 n.6 ("it would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it").

The recent decision in Public Employees' Retirement System of Miss., 2010 WL 2175875, at *3, is highly instructive.  There, the court noted that although plaintiffs alleged wrongdoing in connection with eighty-four offerings, plaintiff had not purchased securities in sixty-five of the offerings, and thus, dismissed the Section 11 claims related to the sixty-five offerings.  Id.  Further, the court denied leave for "plaintiffs to add additional, as yet unnamed plaintiffs who purchased certificates related to the additional sixty-five offerings" because it "would…be futile, since plaintiffs themselves concede[d] that the one-year limitations period began to run at some point in 2008 (i.e., more than a year ago), and … so the claims of any such new plaintiffs would be time-barred."  Id.  Likewise, Iron Workers' and Livonia's belated claims as to offerings in which no named plaintiff previously purchased securities are time-barred, and Plaintiffs continue to lack standing with respect to sixteen Offerings in which no named or lead Plaintiff purchased securities.

### C.   Plaintiffs May Not Assert Claims Based on Secondary Market Purchases Made After Supplemental Offerings

With respect to two additional offerings of notes, the 6/19/07 Supplemental Offering of the 4/23/07 Three-Month LIBOR Floating Rate Notes Due April 23, 2012 and the 5/29/08 Supplemental Offering of the 5.50% Fixed Rate Notes (together, the "Supplemental Offerings") -- Plaintiffs' only purchases of those securities occurred in the secondary market following the Supplemental Offerings, and thus Plaintiffs cannot trace their purchases to a particular

registration statement. [15]   Accordingly, Plaintiffs' Sections 11 and 12(a)(2) claims with respect to

those two additional offerings also should be dismissed.

      1.      **Plaintiffs May Not Assert Section 11 Claims Arising From Purchases Following the Supplemental Offerings**

Plaintiffs cannot assert claims under Section 11 for purchases of securities on or after the

date of the Supplemental Offerings.  Section 11 claims require that a plaintiff "trace" the

securities it purchased back to a particular registration statement.  <u>DeMaria v. Andersen</u>, 318

F.3d 170, 176 (2d Cir. 2003).  Once, as here, securities have been issued under multiple

registration statements and those securities are fungible and commingled in the market, it ceases

to be possible to do so.  <u>See, e.g.</u>, <u>Lorber v. Beebe</u>, 407 F. Supp. 279, 285-86 (S.D.N.Y. 1976)

("The courts in this Circuit have consistently… limit[ed] § 11 recovery to purchasers of shares

issued pursuant to the particular registration statement claimed (or found) to be defective.

Anyone who may have purchased identical securities already traded on the open market must

look elsewhere for relief.") (internal citation omitted);  <u>In re Century Aluminum Co. Sec. Litig.</u>,

No. C 09-1001 (SI), 2010 WL 1729426, at *11 (N.D. Cal. Apr. 27, 2010) ("To have standing to

bring suit under Section 11, a plaintiff must have purchased stock in the offering at issue, or trace

later-purchased stock back to that offering.");  <u>Grand Lodge of Pa. v. Peters</u>, 550 F. Supp. 2d

1363, 1373-76 (M.D. Fla. 2008) (holding that Section 11 "requir[es] more than the mere

---

[15] Lead Plaintiff Louisiana Sheriffs Pension and Relief Fund ("Louisiana Sheriffs") allegedly purchased the 4/23/07 Three-Month LIBOR Floating Rate Notes Due April 23, 2012 in the initial offering on April 23, 2007, and then subsequently in the secondary market on October 4, 2007, several months after the 6/19/07 Supplemental Offering of those notes.  (<u>See</u> Prior Compl., Ex. B.)  Accordingly, neither purchase can be traced to the 6/19/07 Supplemental Offering. Louisiana Sheriffs allegedly only purchased the 5.50% Fixed Rate Notes in the secondary market during November and December 2008, well after both the initial and 5/29/08 Supplemental Offering of those Notes.  (<u>Id.</u>)  In addition, as set forth <u>supra</u>, claims by Livonia relating to its purchase of the 5.75% Notes are time-barred, but even if they are deemed timely (they are not), Livonia purchased the  notes in the after market, following two secondary offerings, on January 11, 2008. Thus, none of these purchases can be traced to either the initial or supplemental offerings of the 5.50% Fixed Rate Notes or the 5.75% Notes.

allegation that the purchase . . . [was] 'traceable to' the tainted registration statement and prospectus" where the plaintiff "purchase[d] his shares . . . in the aftermarket some three months after the [secondary offering]"); McFarland v. Memorex Corp., 493 F. Supp. 631, 641-42 (N.D. Cal. 1980) (dismissing Section 11 claim where plaintiff failed to allege he purchased "new stock" in the aftermarket following a secondary offering ).

Although Section 11 was designed to provide "stringent penalties" for false or misleading registration statements, Congress did not intend to "provide a remedy for other than the particular shares registered" in a particular offering. Barnes, 373 F.2d at 272; see In re Century Aluminum, 2010 WL 1729426, at *13 ("Section 11 simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement"). Congress thus limited the Section 11 cause of action for the purchase of securities issued under a false or misleading registration statement to "any person acquiring *such* security." 15 U.S.C. § 77k(a) (emphasis added); In re Century Aluminum, 2010 WL 1729426, at *12 ("a named plaintiff has standing under Section 11 only as to the documents that governed his own purchase of securities"). By referring to purchasers of "such security," Section 11 plainly limits standing to those purchasers who can trace title to a particular registration statement and thus can prove that they have purchased a security issued under *that* registration statement. See Krim v. pcOrder.com, Inc., 402 F.3d 489, 496-500 (5th Cir. 2005).[16]

Here, the 4/23/07 Three-Month LIBOR Floating Rate Notes Due April 23, 2012 and the supplemental 6/19/07 Floating Rate Notes Due April 23, 2012 were each issued at different

---

[16] Furthermore, the limitations in Sections 11(e) & (g), capping the total liability of underwriters by reference to the total amount underwritten in a particular offering and the price at which securities were originally offered, "point in the direction of limiting § 11 to purchasers of the registered shares, since otherwise their recovery would be greatly diluted when the new issue was small in relation to the trading in previously outstanding shares." Barnes, 373 F.2d at 272 (citing 15 U.S.C. §§ 77k(e) & (g)).

times, pursuant to different prospectuses, and underwritten by different syndicates.  (See Compl. at A-16 to A-18.)  Likewise, the 4/25/08 5.50% Fixed Rate Notes and the supplemental 5/29/08 5.50% Fixed Rate Notes were each issued at different times, pursuant to different prospectuses and underwritten by different syndicates.  (See id. at A-23 to A-25.)  Plaintiffs first purchased the Three-Month LIBOR Floating Rate Notes almost four months after the supplemental offering, and they purchased the 5.50% Fixed Rate Notes almost six months after the supplemental offering.  (See id., Ex. B.)  The analysis of which facts were material and required disclosure were not necessarily the same for the initial offerings and supplemental offerings, and different underwriters were involved in each offering.  Thus, Plaintiffs cannot establish tracing for purchases made after the date of the Supplemental Offerings, and indeed there is no set of facts under which Plaintiffs could trace the notes purchased in such transactions to the particular Offerings in question.  Accordingly, claims based on Plaintiffs' purchases after the date of the Supplemental Offerings must be dismissed.[17]

### 2. Plaintiffs May Not Assert Section 12(a)(2) Claims Arising From Secondary Market Purchases

Plaintiffs do not have standing to assert Section 12(a)(2) claims with respect to the Supplemental Offerings because they did not purchase securities *in* those offerings, but rather purchased securities in the secondary market several months later.  Section 12(a)(2) (formerly Section 12(2)) establishes a cause of action against a person who "offers or sells a security . . . by means of a prospectus."  15 U.S.C. § 77l(a)(2).  This language refers only to "a public offering by an issuer," and excludes secondary market transactions.  See Gustafson v. Alloyd Co., Inc.

---

[17] Where, as here, plaintiffs have alleged only boilerplate conclusions that plaintiffs purchased shares "pursuant to or traceable" to an offering and have not "alleg[ed] any facts showing that the named plaintiffs' purchases are traceable" to particular offerings, "there is no reason to defer [the question of standing] to a later stage."  In re Century Aluminum, 2010 WL 1729426, at *12.

513 U.S. 561, 578 (1995) ("The intent of Congress and the design of the statute require that §

12(2) liability be limited to public offerings.").

Indeed, since <u>Gustafson</u>, courts in this Circuit consistently have held that where, as here,

the complaint fails to plead facts demonstrating that the plaintiffs purchased their securities

directly in a public offering, rather then in the secondary market, a claim under Section 12(a)(2)

must be dismissed.  <u>See, e.g.</u>, <u>In re Fuwei Films Sec. Litig.</u>, 634 F. Supp. 2d 419, 445 (S.D.N.Y.

2009) (Sullivan, J.) (holding that liability "only attaches to plaintiffs who purchased their shares

directly in the initial public offering, and not the so-called 'aftermarket'"); <u>Pub. Employees' Ret.</u>

<u>Sys. of Miss.</u>, 2010 WL 2175875, at *6 (limiting Section 12(a)(2) claims "to persons who have

directly purchased the securities from the underwriting defendants in the subject public

offering(s), and not in the secondary market"); <u>In re Cosi, Inc. Sec. Litig.</u>, 379 F. Supp. 2d 580,

589 (S.D.N.Y. 2005) ("Well reasoned opinions in this Circuit . . . [have] interpreted <u>Gustafson</u> to

preclude purchasers in private or secondary transactions from bringing actions pursuant to §

12(a)(2) based on those purchases."); <u>In re Wells Fargo</u>, 2010 WL 1661534, at *5 ("Section

12(a)(2) requires a plaintiff to plead and prove that it purchased a security directly from the

issuer as part of the initial offering, rather than in the secondary market.").

## II.     THE COMPLAINT FAILS TO STATE A SECTION 12(a)(2) CLAIM AGAINST THE UNDERWRITER DEFENDANTS

All the Section 12(a)(2) claims against the Underwriter Defendants -- including with

respect to securities that Plaintiffs actually purchased *in* the Offerings -- should also be dismissed

because Plaintiffs fail to allege that they purchased securities *from* any of the Underwriter

Defendants.[18]

---

[18] Certain of the securities at issue in this case are currently trading above their initial offering price.  (<u>See</u> Pietrzak Aff., Exs. D-G.)   Thus, it comes as no surprise that Plaintiffs failed to tender the securities that they purchased and continue to hold, and their Section 12(a)(2) claim should be dismissed for this additional reason.  <u>See In re AOL</u>, 381 F. Supp. 2d at 247 ("as a condition of requesting rescission, plaintiff is required to tender his securities") (citation

Section 12(a)(2) provides an express right of action only against a purchaser's immediate seller.  15 U.S.C. §77l(a)(2) (seller "shall be liable . . . *to the person purchasing such security from him*") (emphasis added).  This is an express privity requirement, meaning that "only a defendant from whom the plaintiff purchased securities may be liable."  In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 49 (2d Cir. 1991)).  Thus, a plaintiff must allege that it purchased securities from a named defendant, and does not have standing to sue a defendant that was not a "seller" as to that plaintiff.  See, e.g., In re Orion, 2009 WL 2601952, at *2; In re Century Aluminum, 2010 WL 1729426, at *10; In re Wells Fargo, 2010 WL 1661534, at *5; In re Airgate PCS, Inc. Sec. Litig., 389 F. Supp. 2d 1360, 1367 (N.D. Ga. 2005); In re Royal Ahold N.V. Sec. & ERISA Litig., 351 F. Supp. 2d 334, 406-07 (D. Md. 2004); Dartley v. ErgoBilt Inc., No. Civ. A. 398CV1442M, 2001 WL 313964, at *2 (N.D. Tex. Mar. 29, 2001).  Accordingly, a class action complaint asserting Section 12(a)(2) claims must contain sufficient allegations to demonstrate that *some* named plaintiff has standing to sue *each* named defendant.  See In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F. Supp. 2d 249, 257 (S.D.N.Y. 2004).

The Complaint entirely fails to identify which, if any, of the twenty Underwriter Defendants directly sold particular securities to the lead and named Plaintiffs, much less that a lead or a named Plaintiff purchased securities from each of the Underwriter Defendants.  Plaintiffs allege only that "[t]he Underwriter Defendants were 'sellers' of the Bond Class Securities within the meaning of the Securities Act because they (i) transferred title to Plaintiffs and other members of the Class who purchased in the Offerings; and (ii) solicited the purchase of

---

omitted).  As the court explained in AOL, Plaintiffs should not be allowed to withhold tender in an attempt to game Section 12(a)(2)'s rescissory remedy by "speculating on the success or value" of the securities in question "at the total risk" of the Underwriter Defendants.  Id.  Because tender must entail "an explicit demand for rescission" in the complaint, Plaintiffs' equivocal assertion in the Complaint that they are entitled to either rescission or damages is insufficient.  Metz v. United Counties Bancorp, 61 F. Supp. 2d 364, 379 (D.N.J. 1999).

the Bond Class Securities by Plaintiffs and other members of the Class . . . ."  (Compl. ¶ 310.)

These are the sort of rote, boilerplate assertions the Supreme Court has held are not entitled to be

credited on a motion to dismiss:  "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949-50 (2009).  In the absence of factual allegations demonstrating which Underwriter

Defendant or defendants, if any, sold securities to lead and named Plaintiffs, Plaintiffs fail to

state a Section 12(a)(2) claim against *any* Underwriter Defendant.  See N.J. Carpenters Health

Fund, 2010 WL 1473288, at *4 (finding allegations "that Plaintiff purchased Certificates

'pursuant and traceable to' the Offering Documents"…" insufficient to assert standing for

Section 12 claims"); In re Orion, 2009 WL 2601952, at *2 (dismissing Section 12(a)(2) claims

against "Underwriter Defendants" because the complaint "lack[ed] sufficient allegations to

satisfy the 'immediate seller' requirement"); see generally Nomura, 658 F. Supp. 2d at 305 ("[i]f

plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said

so").  Accordingly, the Court should dismiss Plaintiffs' Section 12(a)(2) claim against the

Underwriter Defendants in its entirety.

## III.    PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS OR OMISSIONS

### A.    Plaintiffs Fail to Plead the Sections 11 and 12(a)(2) Claims with Particularity

Even assuming Plaintiffs had standing to assert their claims as to all of the Offerings

(which they do not), Plaintiffs' Section 11 and 12(a)(2) claims also must be dismissed because

Plaintiffs fail to meet the particularized pleading requirements of Rule 9(b).  Because Rule 9(b)

applies to "all averments of fraud," its reach extends to all claims that "sound in fraud,"

regardless of the precise cause of action asserted.  Rombach v. Chang, 355 F.3d 164, 171 (2d

Cir. 2004).  Although Plaintiffs purport to assert only negligence-based claims, the factual basis

for their claims is clearly grounded on assertions of fraud.[19]  Where, as here, allegations

supporting the Section 11 claim "are indisputably immersed in unparticularized allegations of

fraud," Rule 9(b) applies to the claim.  See In re N2K, Inc. Sec. Litig., 82 F. Supp. 2d 204, 210

(S.D.N.Y. 2000) (same); Schoenhaut v. Am. Sensors, Inc., 986 F. Supp. 785, 795 (S.D.N.Y.

1997) (same).

       With respect to the Pick-A-Pay portfolio, in particular, Plaintiffs' theory of why the

Offering Documents were materially false or misleading is that, after acquiring Golden West,

Wachovia promoted and executed a policy purportedly designed to originate billions of dollars

of subprime loans, all the while representing to investors that Wachovia maintained "'strong

underwriting and credit risk management,' 'careful risk management,' [and] 'strong' credit

quality," when it allegedly did not.  (Compl. ¶ 223.)  Specifically, the Complaint alleges that,

> following the merger, Wachovia's Pick-A-Pay underwriting was
> characterized by, among other things: (a) widespread falsification
> of borrower income and employment information; (b) rampant
> resort to "exceptions to policy," which were frequently approved
> by senior loan managers who overruled the Company's
> underwriters; (c) extensive lending to borrowers with FICO scores
> that fell below – and often far below – the subprime cutoff level of
> 660; (d) use of regular, large-scale "instant underwriting events"
> during which high-risk loans were approved en masse and without
> any meaningful review; and (e) reliance on tainted appraisals
> prepared by appraisers who knew what appraisal values were
> needed to get a given loan approved, and who were pressured to
> give values that would allow the loans to go through.  (Compl. ¶
> 111.)

---

[19] Hoping to circumvent Rule 9(b), Plaintiffs allege that their "Securities Act claims do not
allege, and do not 'sound in fraud,' and Plaintiffs specifically disclaim any reference to or
reliance upon allegations of fraud in these non-fraud claims under the Securities Act."  (Compl. ¶
267).  A self-serving disclaimer of fraud does not preclude the application of Rule 9(b) to claims
that sound in fraud.  See., e.g,. Rombach, 355 F.3d at 172 (citation omitted); In re Alcatel Sec.
Litig., 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005) ("boilerplate disclaimers . . . [are] insufficient
to remove these allegations from the requirements of Rule 9(b)"); In re IAC/InterActiveCorp
Sec. Litig., No. 04 Civ. 7447 (RJH), 2010 WL 996483, at *5 (S.D.N.Y. Mar. 19, 2010) ("Even if
a complaint adds boilerplate language disclaiming fraud for its Securities Act claims, its
gravamen is fraud if it alleges a unified 'fraudulent scheme.'").

See Ladmen Partners, Inc. v. Globalstar, Inc., No. 07 Civ. 0976 (LAP), 2008 WL 4449280, at

*13 (S.D.N.Y. Sept. 30, 2008) (holding that "allegations of knowing and deliberate

misrepresentations fundamentally sound in fraud").  The Complaint here clearly is premised on

an overall theme of fraud, demonstrating that Rule 9(b) applies.

  In order to satisfy Rule 9(b), a plaintiff must "(1) specify the statements [it] contends

were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent."  Novak v. Kasaks, 216 F.3d 300, 306 (2d

Cir. 2000) (citation and quotations omitted).  In order to satisfy the forth prong -- the "why" -- a

plaintiff must "allege facts giving rise to a strong inference of fraudulent intent" on the part of

each defendant.  Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999) (citation and

quotations omitted); Rombach, 355 F.3d at 176; Coronel v. Quanta Capital Holdings Ltd., No. 07

Civ. 1405 (RPP), 2009 WL 174656, at *16 (S.D.N.Y. Jan. 26, 2009).

  Plaintiffs plainly fail to meet the heightened pleading requirements of Rule 9(b).  As

discussed above, the Complaint does not contain a single factual allegation regarding the

Underwriter Defendants other than the boilerplate assertion that "they (i) transferred title to

Plaintiffs and other members of the Class who purchased in the Offerings; and (ii) solicited the

purchase of the Bond Class Securities by Plaintiffs and other members of the Class . . . ."

(Compl. ¶ 310.)  The Complaint does not identify specific false statements made by each of the

Underwriter Defendants, much less explain "why" any alleged misstatements by the Underwriter

Defendants were fraudulent or made with scienter, and thus fails to meet the exacting standard of

Rule 9(b).  See, e.g., Coronel, 2009 WL 174656, at *16 (dismissing Section 11 claim because it

did not "convey through factual allegations that the defendants made materially false statements,

and that they did so with scienter") (emphasis omitted).

**B.    Plaintiffs Fail to Allege Actionable Misstatements or Omissions in the Offering Materials Under Any Standard**

Even if Plaintiffs are not held to the heightened pleading requirements of Rule 9(b), the Complaint fails to meet the requirements of Rule 8(a).  To satisfy Rule 8(a), a plaintiff must plead "[f]actual allegations . . . [that] raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Garber v. Legg Mason, Inc., 537 F. Supp. 2d 597, 613-14 (S.D.N.Y. 2008) (applying Rule 8 and dismissing Section 11 and 12(a)(2) claims for failure to plead materiality), aff'd, 347 Fed. Appx. 665 (2d Cir. 2009); In re CIT Group, Inc. Sec. Litig., 349 F. Supp. 2d 685, 691-92 (S.D.N.Y. 2004) (same); In re Merrill Lynch & Co., 272 F. Supp. 2d at 253 (holding that "'[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal' of Section 11 claims") (citation omitted).  Under Sections 11 and 12(a)(2), therefore, Plaintiffs must allege facts demonstrating that (i) the offering documents contained a material misrepresentation; and (ii) defendants had a duty to disclose particular information that would have prevented the alleged misrepresentation.  See Basic, Inc. v. Levinson, 485 U.S. 224, 232 (1988); Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008), aff'd, 347 Fed. Appx. 617 (2d Cir. 2009).

Plaintiffs, however, have alleged no facts that would "nudge" their Sections 11 and 12(a)(2) claims "across the line from conceivable to plausible."  Iqbal, 129 S. Ct. at 1950-51 (quoting Twombly, 550 U.S. at 570).  As set forth in detail in Wachovia's memorandum in support of its motion to dismiss the Complaint, which the Underwriter Defendants incorporated herein by reference, Plaintiffs fail to plead any materially false or misleading statements or omissions in any of the Offering Materials.  In light of these shortcomings, Plaintiffs have failed to "state a claim that is plausible on its face," i.e., one with "factual content that allows the court

to draw the reasonable inference that [each] defendant is liable for the misconduct alleged." Id.,

at 1949.

## CONCLUSION

For the foregoing reasons and those set forth in Wachovia's memorandum of law, the

Underwriter Defendants respectfully request that their motion to dismiss the Complaint be

granted in its entirety and with prejudice, and that the Court grant such other and further relief as

it deems just and proper.

Dated: New York, New York
        July 14, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP


By:   /s/ A. Robert Pietrzak
      A. Robert Pietrzak
      rpietrzak@sidley.com
      Saima S. Ahmed
      sahmed@sidley.com
      Owen H. Smith
      osmith@sidley.com

787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Underwriter Defendants

Of Counsel:
Sara B. Brody (Admitted *Pro Hac Vice*)
sbrody@sidley.com
Sidley Austin LLP
555 California Street
Suite 2000
San Francisco, CA 94104
(415) 772-1200

## EXHIBIT A

### Underwriter Defendants

1. Banc of America Securities LLC
2. Barclays Capital Inc.
3. BB&T Capital Markets
4. Citigroup Global Markets, Inc.
5. Credit Suisse Securities (USA) LLC
6. Deutsche Bank Securities Inc.
7. Goldman, Sachs & Co.
8. Guzman & Company
9. Jackson Securities, LLC
10. Loop Capital Markets LLC
11. Merrill Lynch, Pierce, Fenner & Smith Incorporated
12. Morgan Stanley & Co., Incorporated
13. M.R. Beal & Company
14. Muriel Siebert & Co., Inc.
15. Samuel A. Ramirez & Company, Inc.
16. Sandler O'Neill & Partners, L.P.
17. UBS Securities LLC
18. The Williams Capital Group, L.P.